No. 20,011.

EDITH L'ECUYER, *Appellee,* v. THE INDEMNITY LIFE & ACCIDENT COMPANY OF MINNEAPOLIS, *Appellant.*

SYLLABUS BY THE COURT.

ACCIDENT INSURANCE — *Death by Fire — Not Within Terms of Policy.* The undisputed facts involved herein examined and held to be such that it was error to overrule the demurrer to the plaintiff's evidence, and that the instructed verdict requested by the defendant should have been directed.

Appeal from Cloud district court; JOHN C. HOGIN, judge. Opinion filed March 11, 1916. Reversed.

*Homer Kennett, Olin Hunter,* both of Concordia, *Henry W. Benton,* and *Frank J. Morley,* both of Minneapolis, Minn., for the appellant.

*Edgar Bennett,* of Washington, *Park B. Pulsifer, Charles L. Hunt, Clyde L. Short,* all of Concordia, and *P. M. Harmon,* of Clyde, for the appellee.

The opinion of the court was delivered by

WEST, J: Plaintiff sued to recover on an accident insurance policy for the death of her husband, alleging that he received his injuries by the burning of a grocery store while he was therein. The clause of the policy relied on by the plaintiff provided for the payment of $2400 for death caused "(4) By the burning of a Dwelling, Hotel, Office Building, Theatre, School Building, Lodge Room, Club House, Store or Barn, while Assured is Therein." Several members of the family were in the building at the time of the injury, and the testimony was, in substance, that the day was very hot, the store building was about eighty feet long north and south, a coal-oil tank being in the southeast corner, an elevator on the west, a cashier's desk about twenty-five feet north of the elevator. About five-thirty in the evening the deceased went back to the tank to pump three gallons of oil into a five-gallon can, and was pumping it from a measuring tank of oil. An explosion occurred, after which the deceased was seen getting up from the floor. One witness looked towards the southeast

corner of the store, and all he could see was flames; did not see the decedent then, but did in a minute or two. The latter ran out of the building enveloped in flames and threw himself into a water tank. He had on a pair of pants and a shirt, which were found saturated with coal oil. The fumes of kerosene could be smelled in the room after the explosion, but none was burned except what was in the five-gallon can. The main tank was not affected. The five-gallon can was found split open, but the cap was still on the spout, the latter being blown from the can and about fifteen feet therefrom. Flames were seen in the southeast corner of the store; fire ran to the north door, some sixty or seventy feet. A refrigerator and all articles within twenty-five feet of the back end, and the floor, were burned. Ceiling, shelving and counters were burned. Fire ran clear to the north door, sixty or seventy feet, and broke the plate glass in front; collected $900 loss on building from insurance company. The burns were first, second and third degrees, on the neck, right ear, right arm, back and abdomen, causing death in about one week. One witness testified that before the deceased reached the tank he looked like a ball of fire; that the upper part of his clothing was mostly burned off; left leg of trousers burned; pulled the back of the trousers off and pulled a button out of the flesh with the clothing; burned more by the collar, under the ear, than any other place. The father testified, among other things, that the building was not on fire prior to the explosion; that the decedent got up immediately after the explosion and ran out of the building, his clothing on fire; also that the noise attracted his attention; he looked southeast towards the corner of the store and all he could see was flames. In a minute or two the decedent "came from under there, was thrown down and he came out and I saw him then. He raised up and run out of the building, from the flames to the door." Also that he looked that way the instant he heard the explosion "and saw Albert come out of flames . . . Albert was afire and ran ahead and I followed him out." The widow testified quite similarly, stating, among other things, that she did not see any fire prior to the explosion, but she heard the explosion, looked southeast "and saw flames and smoke, she later saw her husband, he was on his hands and knees starting to get

up.   He started and ran towards front of the store, his clothing was on fire then."

Plaintiff recovered and the defendant appeals, the principal contention being that the facts did not show liability except for a minor sum under another clause of the policy, which sum was tendered by the defendant.   It is claimed that the evidence did not show that the deceased caught on fire from the building, but only that the building itself caught on fire after the explosion, and did not show at what point or time the deceased received his injuries.   The jury were instructed that if the accident was caused by fire which burned wholly or in part a store building while the deceased was therein, and that the required proofs of death were furnished, the plaintiff was entitled to recover, but that if he received his injuries from any other source, whether prior to or simultaneous with the accident which set fire to the building, the amount sued for could not be recovered; that some part of the building or of the material of which it was composed must have been consumed by the fire, and not merely blackened by smoke or scorched by heat.

The defendant insists that the death was caused by an explosion, and not by the burning of the building within the terms of the policy; that the explosion of the coal oil in the small can set fire to the building; that the oil was sprayed upon his clothing, which burned by reason of the oil therein, and that "The only rational conclusion to be drawn from all the undisputed facts is that deceased's injuries were due to the explosion of the can of coal oil, and that the burning of the building did not contribute to them and was only an incident to the explosion."   There was no dispute as to the facts, save as the witnesses gave different versions and word pictures of the scene in various parts of their testimony, and while it does appear that the building itself was partially burned, it seems beyond question that the explosion of the can and not the burning of the building caused the death.   Manifestly the decedent was out of the building before the fire had made any progress towards consuming any portion of the building, and it could not have been the burning of the building while he was therein which caused his death.   This being apparent, it was error to overrule the demurrer to the plaintiff's evidence and

Ladd v. Railway Co.

submit the case to the jury, and refuse the defendant's request for an instructed verdict.

Other matters are discussed, but in view of this conclusion they do not require consideration.

The judgment is reversed and the cause remanded with directions to render judgment for the amount tendered by the defendant in its answer.

WEST, J. (dissenting) : The evidence, to my mind, was such as should have been submitted to the jury, and such as to warrant the verdict returned. On the theory that the death was caused by the explosion, the persistent question is, What caused the explosion? Doubtless it must have been ignition, and according to the stories of the witnesses when, attracted by the explosion, they looked around, they saw the room in flames, and shortly thereafter saw the decedent rising from the floor covered with flames. The building was burned nine hundred dollars' worth. Only one fire is spoken of. The deceased was in the building when it was full of flames. He was then on fire, and ran out covered with flames, and these facts seem fairly to fill the requirements to render the company liable.