No. 28,540.

THE TOPEKA STATE BANK, *Appellant*, v. ROBERT M. LITTLE, *Appellee*.

(274 Pac. 1118.)

Opinion filed March 9, 1929.

*J. Arthur Myers, Maurice D. Friedberg,* both of Topeka, and *Roscoe W. Graves,* of Emporia, for the appellant.

*O. L. Isaacs* and *W. S. Kretsinger,* both of Emporia, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover the sum of $1,500 as rent due according to the terms of a lease. Defendant admitted the sum of $1,000 was due, and denied further liability. Judgment was rendered for defendant, and plaintiff appeals.

The lease was dated November 22, 1924, and the term extended to February 28, 1930. The lessee agreed to pay $1,500 on December 1 of each year. Five hundred dollars of this sum was to be credited on a judgment which had been rendered in favor of the lessor and against the lessee. In April, 1927, the lessee filed a petition in bankruptcy, and later received his discharge. The schedule of liabilities contained an item, "Balance due on judgment, approximately $1,000," and an item, "Topeka State Bank, balance due under lease on land owned by bank, $500." The first item was the lessor's judgment, and the second item was a balance due on rental which matured December 1, 1926. The trustee in bankruptcy did not take possession of the land, nor recognize the lessee had any interest in it, and the lessee remained in possession. On December

1, 1927, rent fell due and was not paid. When sued for $1,500, the lessee claimed the money consideration of $1,500, payable yearly, stated in the lease, consisted of two distinct items—$1,000 rent, and a $500 payment on the lessor's judgment; and the lessee claimed discharge from liability on the judgment, and hence from liability to pay the $500 item.

From the foregoing it is manifest that the decision depends on how the lease should be interpreted. The instrument fills five pages of the printed abstract. Briefly, it was a tripartite agreement between lessor, lessee and a bank which agreed to finance the lessee in farming and live-stock operations on the leased premises. The relations of the parties were defined by numerous covenants, and the consideration was stated as follows:

"The consideration for the promises and covenants of each to be kept and performed are the promises and covenants of each of the other parties hereto, to be kept and performed; all of which promises and covenants are more particularly set out hereinafter."

Material portions of those covenants relating specifically to the subject of rent to be paid by the lessee to the lessor follow:

"*Fourth:* For the use of said premises for the term mentioned, and in consideration of the other covenants and promises to be kept and performed by first party, the second party covenants and agrees to pay to first party the sum of fifteen hundred ($1,500) dollars per year; the first payment becoming due and shall be paid December 1, 1925; and a like and equal amount shall be paid on the first day of each following December so long as this lease shall remain in effect, . . .

"*Fifth:* To secure and guarantee the payment of the above sum of fifteen hundred dollars, the yearly rental for the use of the above described land, it is agreed that first party shall have the statutory landlord's lien upon all the crops, growing, grown, and produced on said premises, but shall not have any lien upon the other chattels of second party.

"*Sixth:* First party agrees that upon the payment to it of the above mentioned sum of fifteen hundred dollars it will, out of each fifteen hundred dollars received, credit five hundred ($500) dollars towards satisfying and paying the judgment of two thousand five hundred thirty-two **($2,532.80) dollars** . . . it has against second party.

"*Eighth:* In addition to the payment of fifteen hundred dollars per year for the use and occupation of said premises, second party agrees to pay to first party the sum of five hundred dollars, on or before February 10, 1925, the entire amount thereof to be applied toward the partial payment of the judgment above mentioned."

To the mind of this court the meaning of this lease is perfectly

clear. In consideration of all the covenants to be kept and performed, the lessee leased the land for a yearly rental of $1,500. Out of each $1,500 yearly rent received, the lessor agreed to apply $500 toward satisfaction of the judgment. Manifestly there is no sound basis for the contention that the yearly rent of $1,500, secured in its entirety by landlord's lien, was cut down to $1,000 because the landlord agreed to apply part of the sum received to a specific use.

The lessee contended the parties themselves had construed the lease as providing for $1,000 rent and a $500 payment on the judgment. Over objection the court received evidence on the subject, and even admitted oral evidence concerning the negotiations concluded by execution of the written instrument. The competent evidence was in writing, and this court is able to determine its effect. It fails to disclose mutual practical interpretation, or interpretation by one party relied on by the other. But beyond that, the district court was not authorized to investigate the subject of practical interpretation. Practical interpretation may not be resorted to except in case of ambiguity. (*Utilities Co. v. Bowersock*, 109 Kan. 718, 728, 202 Pac. 92.) Ambiguity does not appear until application of pertinent rules of interpretation leaves it genuinely uncertain which one of two or more meanings is the proper meaning. (*Roxana Petroleum Corp. v. Jarvis*, 127 Kan. 365, 372, 273 Pac. 661.) In this instance the lease was not ambiguous. It speaks for itself, and the claimed ambiguity is merely the invention of ingenuity.

The judgment of the district court is reversed, and the cause is remanded with direction to render judgment for plaintiff in accordance with the views which have been expressed.