No. 33,241

NATHAN GOLDBERG, doing business as THE RAINBOW GROCERY COMPANY, *Appellee*, v. CENTRAL SURETY AND INSURANCE CORPORATION, *Appellant*.

(65 P. 2d 302)

Opinion filed March 6, 1937.

*Fred Robertson, Edward M. Boddington* and *J. O. Emerson,* all of Kansas City, for the appellant.

*Joseph Cohen,* of Kansas City, and *Elias Greenman,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This was an action to recover a loss alleged to have been sustained by robbery where the plaintiff was protected by a robbery insurance policy issued, sold and delivered to him by the defendant insurance company.

The case was first tried in the city court, where oral testimony was introduced, and after a decision was rendered in that court in favor of the plaintiff, the defendant appealed and a transcript of the evidence taken in the city court was filed in the district court. In the district court the parties agreed to waive a jury and to try the case before the court upon the transcript of the evidence given at the trial of the case in the city court. This transcript of the evidence, together with the original policy of insurance, a copy of which was attached to the petition, constituted the entire evidence before the district judge. The transcript of the evidence was read to the court, and a stipulation shows that no admissions were made by either party and nothing was said or done to change, enlarge or restrict the issues of fact or questions of law involved. The trial court, after hearing the evidence read from this transcript, found in favor of the plaintiff and rendered judgment in favor of the plaintiff for $562.49, with interest from October 12, 1934. From this judgment the defendant insurance company appealed to this court, alleging seven specifications of error.

There is a preliminary question raised by the appellee to the effect that this court on appeal should not pass on the weight of the evidence or the credibility of witnesses, citing especially the cases of *Stanley v. Stanley,* 131 Kan. 71, 289 Pac. 406, and *Fox v. Eaglin,* 132 Kan. 395, 295 Pac. 662. In the former case it was held;

"Rule followed that where a general finding and judgment of the trial court is supported by substantial testimony, the supreme court cannot undertake to make an independent determination of the question whether the preponderance of evidence inclined on the side of the prevailing party or on the side of his adversary." (Syl. ¶ 2.)

In the latter case reference is made to the Stanley case with approval, but in both these cases the evidence was oral and not documentary. The distinction as to the duty of the court upon appeal, where findings are made by the trial court, is based upon the fact of whether the evidence was oral or documentary. If it was documentary or by depositions or transcript, the trial court, not seeing or hearing the witnesses, would have no better opportunity to weigh the testimony or determine the credibility of the witnesses than a court of review with the same testimony before it.

It was said in *Mathewson v. Campbell*, 91 Kan. 625, 138 Pac. 637:

"The decision of that court is, of course, entitled to consideration, but, as has been frequently decided, where the case comes before this court on written or documentary evidence practically as it was presented in the district court, this court must decide for itself what the facts establish, substantially as it would if the case was original in this court. (*Moore v. Pye*, 10 Kan. 246; *Robinson v. Melvin*, 14 Kan. 484; *Durham v. C. C. & M. Co.*, 22 Kan. 232; *Bank v. McIntosh*, 72 Kan. 603, 84 Pac. 535; *Belknap v. Sleeth*, 77 Kan. 164, 93 Pac. 580.)" (p. 627.)

In the case of *Farney v. Hauser*, 109 Kan. 75, 198 Pac. 178, it was held:

"Where there is substantial evidence to support a finding made by the trial court or jury, the supreme court adopts such finding as an ascertained fact although the record also contains evidence to the contrary; and the supreme court cannot independently undertake to determine the relative weight of the evidence, except in cases where the controlling evidence is documentary or by deposition; and this rule is the same whether the cause be in the nature of an action at law or a suit in equity." (Syl. ¶ 7.) (See, also, *Topeka State Bank v. Little*, 127 Kan. 796, 274 Pac. 1118; and *Corson v. Oakley*, 138 Kan. 520, 27 P. 2d 290.)

The evidence shows that Nathan Goldberg, doing business as the Rainbow Grocery Company, had a store on Minnesota avenue, in Kansas City, Kan., and three similar stores on the Missouri side. Solomon Goldberg, a relative of his, was in charge as manager or custodian of the Kansas store, which position he had held for about three years. The robbery, which is the basis of this action, is shown by Solomon's testimony to have occurred on Sunday, August 12, 1934, at about three o'clock in the afternoon. The testimony of

Solomon also showed that he and another custodian of one of the Kansas City, Mo., stores and an errand boy of this store went over in an automobile to the Kansas store on Minnesota avenue. Solomon got out of the car at the store and told the other custodian to drive the errand boy to his home and come back to the store, which took about ten minutes' time; that Solomon unlocked the front door of the store and went in for the purpose of working on the books; that after spraying some of the things in the front window to kill the flies he went to the back of the store through a partition and there was met by two men who were armed with a revolver and a sawed-off shotgun. They compelled him to open up the safe and then lie on the floor face down while they went through the safe and took out the currency and money tied up in packages. While he was lying on the floor and after the robbers had taken the money out of the safe, there was a noise at the front door, and it was Dworetzski, the Missouri custodian who had come over with him and had just come back from taking the errand boy to his home. He knocked at the door and rattled it. The robbers told Solomon to get up and wave his hands as if everything were all right. He did this, and then pursuant to orders he laid down on the floor and they tied his hands together. He told of the robbers hitting him twice, injuring his head until it bled, and then they ran out the back door. He untied his hands and went to the front door and followed Dworetzski out to the car and jumped on the running board of the car as Dworetzski was starting to drive away.

Dworetzski testified that he had, after taking the boy home and being gone about ten minutes, come back and tried to get in the door, then stood around there after seeing Solomon wave his hands, then rattled the door again and waited until he saw a man run out the back door. He then went out to the car on the street and Solomon rushed out the door and jumped on the running board. They both testified they went in a circuitous manner around back of the store in an alley and saw one man running ahead of them, but they lost track of him. Then they telephoned to the police and came back to the store, where the police met them, and they found the back door of the store open, the lock and the bars being broken off. The safe was open and a few checks were scattered on the floor. The uncontradicted evidence shows there was $562.49 missing.

The first question raised by the appellant is that there was no robbery and that the evidence of the two parties, above outlined,

does not show robbery. The argument to that effect is based apparently on suspicion, inference and inaccuracies in the statements made by these witnesses and their peculiar conduct in following the robber before notifying the police department. We hold that the evidence shows a robbery, and since there was no conflicting evidence the inaccuracies and other defects in the stories told by these witnesses are not enough to overcome their positive statements as to the occurrence, movements and results constituting a robbery.

The next question involved is whether the robbery came within the terms of the insurance policy. The frequently occurring features of representations and warranties are not involved. We have nothing before us prior to the policy itself. The policy in question was not a general insurance policy but one limited to robbery alone. It defines the terms used therein and makes specific and definite requirements as well as distinctions between different kinds of robbery—for instance, inside robbery and outside robbery. Paragraph 2 enumerates the different kinds of property "in the premises" that may under the policy be insured against loss or damage, concluding with the words, "within the assured's premises." Item 8 of declarations specifies the kind of property insured under this policy in the following words:

"The property insured under indemnity paragraph 2 is money and securities only."

Item 9 treats of both outside robbery and inside robbery. It is as follows, omitting details of outside robbery:

"Item 9. The insurance provided by this policy applies specifically as stated below in sections (a) to (g) respectively:

"Under paragraph 1 (Outside Robbery)
    (Omitted)                     Insurance Premium.

"Under paragraph 2 (Inside Robbery)

"Section (d) on property specified in item 8, from within the premises, while the custodian and at least one other employee of the assured are on duty therein."

The term "premises" is defined in paragraph A of the policy as follows:

"'Premises,' as used in this policy, shall mean the interior of that portion of the building designated in item 3 of the declarations, occupied solely by the assured in conducting his business."

Item 3 of declarations is as follows:

"Item 3. Location of the building containing the premises is various. See endorsement No. 1867 attached to policy. The portion of the building oc-

cupied solely by the assured in conducting his business and herein called 'the premises' is grade floor."

Endorsement No. 1867 gives the location of each of the four different stores included in the policy and specifies the amount of insurance there is on each, all being the same $1,000 each and a total of $4,000, setting them out in two columns, "Outside Robbery" and "Inside Robbery."

The appellant contends that under the evidence it is positively shown that no other employee of the assured was on duty within the premises when the robbery took place. There seemed to be no misconception of this being a requirement. The proprietor said in his testimony:

" . . . Our stores were run with four or more employees and the managers were instructed never to be by themselves in the store. That rule was imparted to Sol Goldberg, the manager at 438 Minnesota avenue. . . . I knew he sometimes went there Sundays to work on the books. I don't know how long he had been doing this before the robbery, but he always went there with somebody, but it was not a regular thing for him to go there Sundays that I know of. . . . My managers were always instructed to have a man with them at the store. Sol Goldberg was instructed when he was hired three years ago. I told him never to be in the store by himself and told all the rest of the clerks that. I told Sol Goldberg, my manager, that a half dozen or a dozen times for no particular reason."

Solomon Goldberg testified as follows:

"My employer told me several times he likes to have more than one man in the store. . . . I did not go with these fellows to the boy's home. I got out and then the other two employees obeyed my order and went on. I did not see them any more until Joe Dworetzski came back to the front door while they were getting the money. . . . I was lying down on the floor when the knock at the door came and they told me to get up and wave my hand at the man at the door and lie down again, so when I heard the knock at the door they had taken the package out of the safe and told me to lie down. They took the package out before the knock came. After I laid down the knock came. . . . We came over to the store, but not every Sunday, and usually brought someone with me, and usually took them in with me, and this is the first time that I had not done it."

Joseph Dworetzski testified as follows:

"The plaintiff had told me that two men must be in the store. I have heard it often during the seven years I have worked for him. I cannot exactly remember how many times he has told me, but I would say anywhere as much as twenty to thirty times, possibly more, that two men must be in a store at least. When I came back from taking Myers home I came down State avenue and across to Minnesota, west on Minnesota, and stopped in front of the store, and when I got out and went to the door the door was

locked. I had not been in the store yet. Never did go into the store that afternoon until I came back from the pursuit. I knocked at the door and had to wait two or three minutes, and then a man standing up waved his hands and then went down behind the counter. I then waited two or three minutes and saw a man run out the back door."

The messenger boy testified that the trip from the store to his home took not over five minutes.

The evidence shows that the robbery was of money, as required by item 8, and there is no conflict as to the amount. Neither can there be any doubt that it was from within the premises, but did the robbery occur while the custodian and at least one other employee of the assured were on duty therein? Unless it occurred while the custodian and one other employee of the assured were on duty in the premises, it would be outside the requirements of the policy.

Appellee insists that Dworetzski was an employee of the assured and he was endeavoring to comply with the requirements of the policy when he attempted to enter the inside of the building on the "grade floor," as the interior is described, and when he was prevented from so doing through no fault of his own or that of Goldberg, and because his inability to enter was due only to the overwhelming and unavoidable actions of the bandits, it should be held to be in compliance with the terms of the policy. Whatever merit and justice there may be in this line of argument it does not help us to answer the plain and reasonably simple question of whether or not he was in fact in the premises at the time of the robbery. It may be properly considered in connection with the next question to be taken up in this case, but certainly not as to this first question. He was an employee of the plaintiff, but he did not come to the front door of the store for about ten minutes after the custodian entered the store alone, and when he arrived at the door the money had been taken out of the safe. We cannot say that Dworetzski was on duty within the premises at the time of the robbery, but are compelled under the evidence to hold that no other employee of the assured was on duty with the custodian within the premises when the robbery was committed and therefore there was no compliance with that requirement of the policy. The evidence of the case shows that the owner instructed this custodian and other employees to observe this requirement, and the evidence of this custodian that he never before had gone into the store alone will not help the question of fact as to a compliance with or disregard of

this requirement on this occasion. Appellee insists the evidence shows a substantial compliance, and cites *Insurance Co. v. Metcalf,* 59 Kan. 383, 53 Pac. 68, and *Insurance Co. v. Weeks,* 45 Kan. 751, 26 Pac. 410, and a number of decisions from other states. Both Kansas cases grew out of deviations from agreements or answers and statements made by the assured in his application for insurance, and concerned watchmen, and it was held in each that the compliance was not literal but was substantial. The court held the watchman was bound to exercise reasonable care and diligence in attending to his duties. In the case at bar the controversy is not over a compliance with an agreement or action in accord with answers to questions in the application, but is a positive requirement made by the insurer to be complied with before there can be any liability.

The case of *Brown v. International Indemnity Co.,* 121 Kan. 406, 247 Pac. 432, was where the insurance policy against theft of an automobile provided that the company would not be liable for loss which might occur while the automobile was being rented, and it was held that no recovery could be had when the theft occurred while it was rented. The syllabus to the opinion is as follows:

"There can be no recovery upon an insurance policy unless the loss complained of is one which was indemnified against by the terms of the policy."

In *L'Ecuyer v. Life & Accident Co.,* 97 Kan. 540, 155 Pac. 1088, the policy indemnified the assured against injuries which he received by the burning of a grocery store "while assured is therein." There was an explosion of a tank of oil which set the assured's clothes on fire and he ran out of the building and was so badly injured that he died, but the decision was that his injury was not within the terms of the policy.

In *H. & S. Pogue Co. v. Fidelity & Casualty Co.,* 299 Fed. 243, it was held:

"A policy insuring owners of a department store against interior robbery, limited to 'loss of property from within the premises while there are two or more adult persons present on duty therein,' held not to cover a loss of property taken from the store after it was closed for the day, by persons unintentionally admitted by a watchman, who was then the only person on duty therein, and who was at once bound and blindfolded, as was another watchman, who later appeared and was admitted; there being at no time 'two or more persons' who were 'on duty' in the premises." (Syl.)

Appellee carefully attempts to distinguish this case from the case at bar, mainly because in the Pogue case the assured did not at-

tempt a substantial compliance with the requirements of the policy by keeping the required number of watchmen on duty, while in this case the owner consistently directed his custodian never to be in the store alone, and the custodian said he never before had gone in the store alone. We do not think that because of the consistent endeavor and the fact that this was the only deviation from the requirement, it becomes a substantial compliance. Good attitude and intentions toward compliance do not always amount to substantial compliance with hard and fast, definite provisions of a policy.

It is suggested that any doubt in a matter of this kind should be resolved in favor of the assured instead of the insurer. This applies to doubts or ambiguities as to the construction of a policy. It was held in *Evans v. Accident Association*, 102 Kan. 556, 171 Pac. 643, that—

"The general rule is that if the terms of an accident policy are obscure or open to more than one construction, that one which is more favorable to the insured must prevail." (Syl. ¶ 2.)

In *Tripp v. United States Fire Ins. Co.*, 141 Kan. 897, 44 P. 2d 236, it was held:

"In interpreting a policy of insurance, if the terms thereof are open to more than one construction, that one which is more favorable to the insured must prevail." (Syl. ¶ 2.)

Also, *Graff v. Insurance Co.*, 107 Kan. 648, 193 Pac. 356, where it was held:

"Applying the principle that 'contracts of insurance are to be construed, where construction is permissible, most strongly against the insurer and in favor of the insured.' (*Insurance Co. v. Milling Co.*, 69 Kan. 114, 76 Pac. 423.) . . ." (Syl. ¶ 2.)

All these cases refer to doubts or ambiguities in the meaning of the language of the policy. Thus far in this case no such doubt has been under consideration. No suggestion has been made as to a doubt in the meaning of the requirement of the custodian having at least one other employee of the assured on duty with him in the store.

Appellee raises a question under his theory of substantial compliance, reasonable construction and good intentions to comply with the requirements, which is worthy of serious consideration in connection with other parts of the policy not above quoted, viz., item 5 and paragraph D and their relation to other parts of the policy, particularly item 3 and the rider or endorsement No. 1867. Item 5 is as follows:

"Item 5.. Not more than one custodian outside the premises will have custody of the property covered hereby at any one time, except as herein stated: 4 Custodians. See endorsement No. 867 attached to policy."

The rider or endorsement No. 1867 was not copied thus far in this opinion, but the substance of it was given. Particular attention is now directed to the second column of it under the heading of paragraph 1 (outside robbery): there appears opposite the location of each of the four stores in the first column the following: "1 Custodian $1,000" and in the third column, headed under paragraph 2 (inside robbery), there appears opposite the location of each of the four stores in the first column the following: "$1,000." The main difference is the additional figure and word, "1 custodian" in the second column which is not in the third column.

Appellee reasons that a fair construction of this endorsement makes it applicable to inside robberies as well as outside robberies. That if it were the intention of the endorsement to affect only outside robberies and to afford protection to the assured when his property was in the custody of only one custodian, it would have been unnecessary to have had this endorsement for the reason that item 5 standing by itself is not ambiguous. And because item 9 requires a custodian and at least one other employee, it was necessary to have this endorsement in order that the assured might have the protection of the policy when an inside robbery occurred, even though only one custodian was present. We are not convinced by this line of reasoning that the mention of one custodian in the rider or endorsement, under the heading of outside robbery, neutralizes or changes the requirement under item 9 which specifically requires for inside robbery the custodian and at least one other employee within the building.

Reference is also made to paragraph D in the policy, which is undoubtedly intended to cover an emergency, and is as follows:

"D. If the assured is unable, because of an unforeseen contingency beyond his control, to maintain any service or perform any act specified in the declarations, thereby increasing the risk assumed hereunder, this insurance shall not be forfeited but the corporation's liability in such an event shall be limited to the amount of insurance which the premium charged for this policy would have purchased under the corporation's manual of rates in force when this policy was issued, for the actual risk under which the loss was sustained."

The failure of the custodian to take with him into the store another employee, although it was the first and only time he had

gone into the store alone, and although the owner had many times admonished him never to go in alone, is surely not an unforeseen contingency beyond the control of the custodian or even of the owner of the store. Instead of having one or both of the employees leave the automobile at the same time he did, and go into the store with him, or going with them to the home of the errand boy and returning with the other employee ten minutes later, he directed them to drive away and entered the store alone. We can think of emergencies while several employees are in the store that might suddenly call all of them out except the custodian, but nothing akin to that caused this custodian to be alone in the store on the occasion under consideration. Good intentions, substantial compliance and reasonable construction may properly be considered in connection with paragraph D, but we fail entirely to recognize any unforeseen contingency beyond control that brought about this disregard of the unambiguous rule requiring the custodian to be accompanied by at least one other employee in the store when the robbery occurred. The most liberal application of the emergency provisions of paragraph D to the facts of this case does not seem to us to be good grounds for avoiding the necessity of a compliance with the specific requirements of the policy. This question was considered as applied to similar circumstances in the case of *Security State Bank v. Royal Indemnity Co.*, 127 Kan. 230, 273 Pac. 430, where it was said:

"And *further held,* that failure of the employees of a bank to carry out directions of its managing officer to provide a guard for a custodian while delivering money away from the bank's premises (during which time the custodian was robbed), was not an 'unforeseen contingency' (such as is described in the policy and set out in the opinion) as would avoid forfeiture of the insurance." (Syl. ¶ 2.)

We conclude that the plaintiff was barred from recovery on the policy by failure to comply with the specific requirements of the policy.

The judgment is reversed with directions to render judgment for defendant.