(563 P.2d 1112)

No. 48,376

A. J. Holmquist, Martha J. Holmquist, Ronald E. Aupperle, Sharon L. Aupperle, Gerald Dean Banks, Cella B. Banks, Ronald G. Kreigh, Jane A. Kreigh, Otis L. Davis, Jr., Lois V. Davis, Norman D. Johnson, Blanche L. Johnson, Gary D. Drummond, and Mary L. Drummond, *Appellees*, v. D-V, Inc., a corporation, *Appellant*.

Opinion filed April 29, 1977.

*Kenneth W. Wasserman*, of Norton, Shaffer & Wasserman, of Salina, for the appellant.

*John M. Simpson*, of Kennedy, Berkley, Simpson & Yarnevich, Chartered, of Salina, for the appellees.

Before Harman, C.J., Abbott and Parks, JJ.

Abbott, J.: This is an appeal from an order of the district court of Saline County granting an injunction enjoining the defendant-appellant from violating restrictive covenants in the eastern section of Shalimar Plaza Addition to Salina, Kansas.

The case was submitted to the district court on a written stipulation of facts. No other evidence was taken or considered by the district court.

Shalimar Plaza Addition was platted as one unit consisting of fourteen blocks. It is comprised of a western section consisting of blocks one through six and an eastern section consisting of blocks seven through fourteen. The two sections are divided by a four-lane traffic artery (Ohio Street) running north and south. Restrictive covenants were imposed on the western section in 1959 and on the eastern section in 1962. Both sections have land allocated for commercial, business, and residential use. The majority of each section is reserved for single-family dwellings. All of the lots involved in this litigation are in the eastern portion of Shalimar Plaza Addition and are numbered lots one through six in block nine, and lots one and two in block thirteen. The lots involved are located adjacent to each other. Lot one is the northeast corner of the subdivision. The remainder of the lots lie south of lot one along the east side of the subdivision.

All of the parties to this action acquired title to their respective properties after the restrictive covenants were filed of record.

Appellant-defendant was desirous of constructing multifamily housing on the lots. On June 27, 1973, appellant filed an amendment to the 1962 restrictions which specifically permitted construction of multifamily housing on the lots. It was necessary to obtain the written consent of persons holding record title to over one half the land area to amend the restrictive covenants. The attempted amendment to the 1962 restrictions did not have the consent of over half the total land area owners in the eastern portion of Shalimar Plaza Addition. The amendment did have over half the total area owners of the combined eastern and western sections. The trial court held the amendment to be invalid. Prior to the trial court's decision, the appellant requested the Salina City Commission to rezone the lots. The Salina City Commission rezoned the lots, over the objection of residents in the area, from zone "A second dwelling house district" to zone "C apartment house district."

Before construction began, counsel for appellees notified appellant in writing that the restrictive covenants permitted only single-family homes. Appellant started construction, this action

was commenced, and a pretrial conference was held. The parties stipulated to the facts and specified the following issues of law to be resolved by the court:

"1. Is the real estate described in Exhibit 'A' two additions, one of which is comprised of Lots 1-6 and the other of which is comprised of Blocks 7-14 as shown on the said exhibit or is the said real estate one addition comprised of the said Blocks 1-14?

"2. Are the facts set forth in paragraphs 16 and 19 of the above stipulation of facts relevant and admissible evidence?

"3. Are the facts set forth in subparagraphs (c), (g) and (h), of paragraph 18 of the stipulation of facts violations of the restrictions set forth in Exhibit 'C'?

"4. Have the violations of the restrictions set forth in Exhibit 'B' or Exhibit 'C' been so extensive so as to cause the said restrictions to be null and void, thereby permitting the construction of apartments, duplexes, and other buildings by the defendant in Shalimar Plaza Addition in contravention of the terms of the said exhibits?"

Paragraphs 16, 19, and 18 (c), (g) and (h) of the stipulation of facts read:

"16. The plaintiffs A. J. Holmquist and Martha J. Holmquist own a residence and operate and conduct a commercial business immediately adjacent to that property on which defendant plans to construct duplexes and use the road ways of Shalimar Plaza Addition for such commercial business purposes. Such commercial business is in the nature of a sand mining operation and the roadways are used for hauling gravel and dirt and other material and machines used in such business.

"19. Multi-family condominiums, townhouses, and apartment buildings have been built and are being constructed on the real estate immediately north of and adjacent to the defendant's proposed construction site.

"18. The following is a listing of other or possible minor violations of the restrictions set forth in Exhibit 'C':

(c) Block 11, Lot 4. The owner conducts a sign business in the residence.

(g) Block 14, Lot 2, and Lot 6. Each residence has a carport attached.

(h) Block 14, Lot 3. The residence has a flat sunshade over the driveway and is attached to the residence."

The trial judge found for the plaintiffs and against defendant on all issues of law and issued the injunction from which defendant appeals. Defendant did not appeal from that part of the judgment holding the restrictive covenants filed in 1962 applied only to the eastern portion of Shalimar Plaza Addition.

This court is not bound by the trial court's findings since all of the evidence was presented by a written stipulation of facts and documentary in nature. The trial court had no better opportunity to weigh the evidence than this court. What the facts establish

may be decided substantially as if the case were originally in this court. (*In re Estate of Miller,* 186 Kan. 87, 348 P.2d 1033; *Goldberg v. Central Surety & Ins. Corp.,* 145 Kan. 412, 65 P.2d 302.)

All parties concede, and the court found, that an owner could not conduct a sign business from lot four, block eleven, of Shalimar Plaza Addition. We are informed that the owner of said lot was conducting a magnetic sign business from his personal residence and that said business was terminated. Appellant, however, questions the determination that carports attached to the residences on lots two and six in block fourteen, and a flat sunshade over a driveway and attached to the residence on lot three in block fourteen, are not in violation of paragraph five of the 1962 restrictive covenants. Paragraph five reads in pertinent part, "No building shall be erected, altered, placed or permitted to remain on any 'A' residential lot other than one detached single family dwelling not to exceed one and one-half stories in height and private garage for not more than two cars." Appellant contends a garage is a "building" and that Webster's Third New International Dictionary of the English Language Unabridged, p. 292, defines a building as "usually covered by a roof and more or less completely enclosed by walls . . ." and therefore a carport or sunshade cannot be a garage since it does not have walls.

Appellant's definition is too narrow. A garage has been defined as a "covered structure" (*Mascolino v. Noland & Cowden Enterprises,* 391 S.W.2d 710 [Ky. 1965]; "a place for the care and storage of motor vehicles" (*Wyatt v. State Farm Fire & Cas. Co.,* 78 Wyo. 228, 322 P.2d 137 [1958]); a place where motor vehicles can be sheltered and stored (*Woods v. Kiersky,* 14 S.W.2d 825 [Tex. Comm'n. App. 1929]); "a garage is a place, structure, or building where motor vehicles are stored and cared for" (38 Am.Jur.2d, Garages, and Filling and Parking Stations, Sec. 1); "a private garage is a structure or building" (61A C.J.S., Motor Vehicles Sec. 715). Had the drafter of the restrictive covenants desired to exclude carports and sunshades from the subdivision, it would have been a simple matter to have done so either by specifically excluding them or by defining garage in such a manner as to exclude them.

In the absence of a specific exclusion or a definition of garage that is clearly exclusionary in restrictive covenants, a carport or

sunshade over a driveway and attached to a single-family residence is held to be a garage and permitted by the restrictive covenants.

It is next urged that the trial court erred in not considering evidence related to the operation of commercial businesses, multifamily condominiums, townhouses, and apartment buildings on real estate adjacent to but not located in Shalimar Plaza Addition. Appellant relies on *Hecht v. Stephens*, 204 Kan. 559, 464 P.2d 258, for authority to introduce the excluded evidence. The *Hecht* case does not hold that it is mandatory for the court to consider changes occurring nearby and outside the area; *Hecht* merely does not preclude the court, in its sound discretion, from so doing. The court may consider the evidence of change outside the restricted area when enforcement of the particular restriction would be inequitable and without appreciable benefit to property in the restricted area (*Hecht v. Stephens*, supra). Generally, changed conditions outside the restricted area should not be permitted to terminate the restrictions where by doing so it would cause property owners in the restricted area to suffer damage. Sound reasoning and authority for such a rule exist:

"Where no radical change in a restricted residential tract has been shown, the fact that apart from and surrounding the tract some business has grown up, and that the land has become more valuable in consequence, does not relieve the lots in the restricted district from the restrictions. The fact that adjoining or surrounding property outside a subdivision restricted for residential purposes is used for business and professional purposes on a large scale does not alter the character of the subdivision itself, and, generally, the encroachment of business and the changes due thereto, in order to undo the force and vitality of the restrictions, must take place within the restricted area.

"It has been said that where changes of conditions result through violations of restrictions within a subdivision, it is a problem of abandonment, whereas if changes of conditions outside the subdivision occur, it becomes a problem of whether or not these conditions affect the entire subdivision so as to defeat its restrictive purposes, but that in both cases the factual situation largely governs as to whether or not equity will refuse to enforce the restrictions for the reason that by doing so the result would be oppressive and inequitable without appreciable value to other property in the restricted area. Where the whole neighborhood has come to be used for business and the residential purpose can no longer be accomplished, and where, if all the restrictions imposed should be rigidly enforced, it would not restore to the locality its residential character, equity will not enforce the restriction.

"Some courts have alluded to the problem presented by the fact that in a growing municipality the outer or front tier of lots in a residentially restricted area must bear the brunt of the onslaught of business and commerce from outside the

area. Generally, the fact that a small portion of a restricted district, lying along the edge or at the threshold thereof, is thus forced to bear the brunt of attack from changed conditions outside the district, with resultant impairment in value for the use prescribed by the restrictions, does not justify abatement of the restrictions as to the part affected because of the hardship visited upon that particular land as compared with the sheltered or interior portion of the district, the view being that one of the best places to hold the line against encroachment of business and commerce upon the restricted area is at a highway or street, since otherwise there would be started a system of gradual encroachment which might swallow up the entire residential area, with the interior tiers of lots 'falling like ten pins' once such encroachment began." (20 Am.Jur.2d, Covenants, Conditions, and Restrictions, Sec. 284, pp. 849-50.)

"A ruling on the relevancy of evidence, based upon remoteness, ordinarily rests in the discretion of the trial court and will not be reversed unless it clearly appears the ruling constituted an abuse of sound judicial discretion." (*Tucker v. Lower*, 200 Kan. 1, 6, 434 P.2d 320.)

On the stipulated facts, we cannot say the trial judge abused his discretion as a matter of law in not considering paragraphs sixteen and nineteen of the stipulations of fact.

Violations of restrictive covenants within the restricted area are relevant, however, and when they are so great or radical as to neutralize the benefits of the restriction and destroy its purpose, a court of equity will refuse to enforce them (*Hecht v. Stephens*, supra).

The granting of an injunction is equitable in nature and involves the exercise of judicial discretion. "Whether injunctive relief will be granted to restrain the violation of a restrictive covenant is a matter within the sound discretion of the trial court to be determined in light of all the facts and circumstances. Absent manifest abuse of that discretion, an appellate court will not interfere. (*Hecht v. Stephens*, supra.)" (*South Shore Homes Ass'n v. Holland Holiday's*, 219 Kan. 744, 751, 549 P.2d 1035.)

No hard and fast rule can be laid down as to when changed conditions have defeated the purpose of restrictions, and each case must be decided on the equities of the situation presented. A number of factors may be considered including, but not limited to, the purpose for which the restrictions were imposed, the location of the restriction violations, the type of violations which have occurred, and the unexpired term of the restrictions (4 A.L.R.2d 1111; 54 A.L.R. 812; and 53 A.L.R.3d 492).

In comparing the restrictive covenants filed in 1959 to those

filed in 1962, it is apparent a larger percentage of the lots in the west half was to be used for commercial use than in the east half, which is mainly restricted to "A" residential use. It then follows that the purpose for which the restrictions were imposed was to insure that the east half of Shalimar Plaza Addition was developed as single-family homes.

It is important to analyze what type of violations have occurred, and where. The eastern portion of Shalimar Plaza Addition consists of 108 lots. All lots on the west side (fronting on Ohio Street) and five lots on the southwest corner of Shalimar Plaza Addition are reserved for commercial development. Six of the seven lots with major violations of the restrictive covenants abut the commercial area. One violation is a lot used for a commercial business operation. Three lots abutting the commercial zone and immediately south of the commercial business violation have multifamily dwellings with parking lots. The other three violations consist of lots being used for parking adjacent to authorized commercial or business activities. The so-called minor violations of the restrictive covenants consist of (1) two lots having storage sheds too close to the back property line, (2) two houses having ground floors containing less than the minimum square feet required (one is short 80 square feet; the other, built and owned by the appellant, is short 128 square feet), (3) one lot has a house that is closer than allowed to the interior lot line, and (4) two businesses covering seven lots are in violation in that they are built across interior lot lines and thus violate the interior lot line setback requirements of the restrictive covenants, although the commercial use of the lots is not in violation.

In the 108-lot subdivision, there are only four lots (three multifamily and one commercial) having violations which are totally incompatible with single-family dwellings. All four violations are adjacent to each other and abut the rear of a permissible commercial zone on the west side of the east portion of Shalimar Plaza Addition in the northwest corner. None of the other violations, either major or minor, appreciably affect the desirability of the subdivision for residential purposes.

The trial court found that the evidence does not sustain appellant's contention that there have been violations so extensive as to cause the restrictions to be abandoned. On the stipulated facts we cannot say as a matter of law there has been a change in

the character and conditions of the subdivision to such an extent as to neutralize the benefits of the restrictive covenant and to destroy its purpose.

Appellant says it would be inequitable or unduly burdensome on it to restrict its use to single-family dwellings. The restrictive covenants were of record when appellant acquired the lots, and thus appellant is subject to the rule in *South Shore Homes Ass'n,* supra, that "[a] person who takes land with notice of restrictions upon it will not in equity and good conscience be permitted to act in violation thereof. . . ." (p. 751.) 5 Powell, Real Property Sec. 685, as well as *Ferraro v. Kozlowski,* 101 N.J. Eq. 532, 138 A. 197; *Goodhue v. Cameron,* 142 App. Div. 470, 127 N.Y.S. 120; *Johnson v. Poteet,* 279 S.W. 902 (Tex. Civ. App. 1925), are cited as examples of restrictive covenants that were not enforced as being inequitable or unduly burdensome.

A careful review of the cited cases reveals substantially different situations than the one with which we are here confronted. Nor is Powell, Real Property, *supra,* of any comfort to appellant. Powell points out that the doctrine of relative hardship has frequently been challenged because it cannot be a "hardship" to enforce a restrictive covenant of which a party had notice. In addition, Powell points out the general rule that when some benefit will result to the party seeking to enforce the restriction, an injunction will issue notwithstanding the disproportionate harm which will accrue to the other party (see, also, 20 Am.Jur.2d, Covenants, Conditions, and Restrictions, Sec. 313, p. 876). The courts have not adopted the position appellant urges except when the party seeking to enforce the restrictions has engaged in inequitable conduct. The appellees have not acted in an inequitable manner, and the trial court did not err in determining that it would not be inequitable or unduly burdensome to enforce the restrictive covenants.

Appellant raises additional points on appeal which were not stipulated to or argued to the trial court, and one point was raised on oral argument which not only was not argued to the trial court, but it was not listed as a point on appeal and was not briefed. Generally an appellate court will not consider issues other than those upon which the parties have tried their case (*Oliver v. Nugen,* 180 Kan. 823, 308 P.2d 132). Appellant relies on *Reznik v. McKee, Trustee,* 216 Kan. 659, 534 P.2d 243, as authority for this

court to consider the additional issues. The *Reznik* case did not consider points not raised on appeal. In *Reznik*, the Supreme Court reviewed the trial court's finding that a revocable trust was contractual and stated that where the evidence before the trial court is wholly written and documentary in form, the reviewing court must decide for itself what the facts establish substantially as it would if the case were originally in this court.

There is authority under exceptional circumstances to review issues not considered by the trial court. If a "newly asserted issue involves only a legal question arising on proved or admitted facts which will be finally determinative of the case, or where consideration is necessary to serve the ends of justice or to prevent a denial of fundamental rights," the court may consider the issues. (*Pierce v. Board of County Commissioners*, 200 Kan. 74, Syl. 3, 434 P.2d 858.)

In *Pierce*, the Supreme Court reaffirmed the view that the court would consider an additional issue on appeal when necessary to affirm a trial court whose judgment was correct but who had relied on a wrong ground or assigned a wrong reason for his decision. All three exceptions were found to exist in the *Pierce* case. The issue considered involved due process of law. The trial court had set aside a tax foreclosure deed on equitable grounds. The county had obtained jurisdiction by publication service after the sheriff returned service showing appellants could not be located in the county.

The Supreme Court has considered the applicability of *Pierce* in a case where a respondent and respondent insurance carrier appealed from the district court order awarding a lump sum judgment for failure of the respondent and its insurance carrier to pay compensation on written demand. Appellant attempted to add an additional issue that written demand was premature and that the parties had agreed on the record, and the record clearly disclosed demand was premature.

The court said in *Shinkle v. State Highway Commission*, 202 Kan. 311, 318, 448 P.2d 12:

"It has been consistently held that this court will not for the first time consider an issue on appeal that has not been presented to the trial court. (*State v. Arlis Blair*, 197 Kan. 691, 421 P.2d 22, and authorities cited therein.)

"It has also been held that no issue, other than an issue going to the jurisdiction of the court over the subject matter of the litigation, will be considered on appeal unless included in the statement of points in the record on appeal, in accordance

with Rule No. 6 (*d*) of this court relating to appellate practice. (197 Kan. LXI.) (*Crowther, Administrator v. Baird*, 195 Kan. 134, 402 P.2d 753, Syl. 2.)

"The appellants claim their motion comes within an exception to the general rule, citing *Pierce v. Board of County Commissioners*, 200 Kan. 74, 434 P.2d 858, Syl. 3. In the *Pierce* case a matter of due process was considered in this court as a ground for reversal of the judgment which had not been presented as an issue to the court.

"We must conclude on the facts in the instant case that the point the appellants attempt to raise for the first time on appeal falls within the general rule and not within the exception considered in the *Pierce* case. It follows the motion to amend the statement of points must be denied."

As in *Shinkle*, on the facts of this case, the points appellant attempts to raise for the first time on appeal fall within the general rule and not within the exception considered in the *Pierce* case.

The judgment of the district court granting injunctive relief is supported by the evidence, and no abuse of discretion has been shown.

Affirmed.