276 So.2d 846 (1973)
Cullen DAVIS, Appellant,
v.
STATE of Florida, Appellee.
No. 72-346.
District Court of Appeal of Florida, Second District.
January 5, 1973.
Rehearing Denied May 2, 1973.
*847 Walter R. Talley, Public Defender, Bradenton, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and David Luther Woodward, Asst. Atty. Gen., Tampa, for appellee.
LILES, Judge.
Appellant was informed against for the crime of robbery of Miss Virginia Brown, an employee of Pioneer Cleaners. The jury convicted him and he was sentenced to ten years in prison. Neither the public defender's nor the State's brief was of any assistance to the court in this appeal. The public defender filed a brief commonly referred to as an "Anders" brief, alleging that they could find no arguable support for the appeal. The State agreed with the public defender.
Appellant was tried for robbing Miss Virginia Brown at approximately 2:00 P.M. on December 27, 1971, while she was working at the Pioneer Cleaners in Tampa, Hillsborough County, Florida. She testified that two men entered the place of business and asked for change for a ten dollar bill. She did not have change but advised them that they could get change next door. Immediately thereafter, they returned to the Pioneer Cleaners and were standing at the counter. The next thing she heard was someone say, "Are you going to hand it over easy?" She turned and saw the gun. She could not describe the gun because all she could see was the hole at the end of it. They did not rob Pioneer Cleaners but took $5.00 from Miss Brown's wallet which was in her purse and left. She was certain that appellant was the one who robbed her. This alone, if the jury believed it, was enough to convict the appellant of the crime charged.
The State then proffered testimony of a separate and independent crime, i.e., armed robbery. At the conclusion of the proffer, defense counsel moved that the testimony be excluded since it was inadmissible under Williams v. State, Fla. 1959, 110 So.2d 654. The court overruled defense counsel's objection and the testimony was admitted.
Mrs. Catherine Morris testified that on December 22, 1971, while she was employed at Mingo's Food Store in Hillsborough County, she was approached by an individual wearing a woman's bikini pants over his head. He had a blue sock on his right hand and a kitchen towel over his left hand. He took money from her and left. Mrs. Morris was asked the question: "Mrs. Morris, you are absolutely positive that this is the man that robbed you that day?" Her answer was: "No, because I did not see his face except for his build, his manner of being, and his voice." She testified that there was no distinguishing features about appellant but she identified him as being the person who robbed her because he had been in and out of the store so many times.
The testimony of Miss Shirley Wilbon, aonther clerk at Mingo's, was virtually the same as the testimony of Mrs. Morris.
This court has rather liberally construed Williams v. State, supra, and has been called upon numerous times to interpret the principles laid down in that case. We reiterate here what we believe this case stands for:
"[E]vidence revealing other crimes is admissible if it casts light upon the character of the act under investigation by showing motive, intent, absence of mistake, common scheme, identity or a system or general pattern of criminality so that the evidence of the prior offenses would have a relevant or a material bearing on some essential aspect of the offense being tried." Williams v. State, 110 So.2d at 662.
From the record it appears that the State adduced sufficient proof that the appellant *848 robbed Miss Brown. The State also proved that Mingo's Food Store had been robbed. Although there was some conflict as to the testimony regarding identification, the jury could certainly have believed that the appellant robbed Mingo's. But these are two separate and distinct crimes. One is not relevant. The evidence of one of the offenses would have no relevancy or material bearing on an essential aspect of the other as required by Williams. One does not go to prove intent, common scheme, identity and certainly no general pattern as required by Williams. These are two separate and distinct crimes. The State went in for the overkill and in doing so committed reversible error.
For these reasons we reverse and remand for a new trial.
MANN, C.J., and PIERCE, J. (Ret.), concur.

ON PETITION FOR REHEARING
MANN, Chief Judge.
Technically, the Attorney General is right. We did consider a point not raised by the appellant in his brief. In fact, the former Public Defender for the Twelfth Circuit did not raise any point in his brief. We deny rehearing.
In the event the State wishes to allege that we are in conflict with Proctor v. Hart, 1854, 5 Fla. 465, and McNally v. State ex rel. Bond Realization Corp., 1933, 112 Fla. 434, 150 So. 751, and seek certiorari, it may help to describe the procedural posture of the matter as we see it. We did by-pass the procedures a bit by recognizing the obvious error in this record. The State, in its petition for rehearing, makes no charge that we were wrong on the law or that there is any argument that can be made in support of this judgment. Rule 3.14, F.A.R., 32 F.S.A., provides that "The petitioner shall be entitled to file only one petition for rehearing with respect to the particular decision and no further petition or motion will be received or filed by the clerk or considered by the Court." This explains why, in Cottages, Miami Beach, Inc. v. Wegman, Fla. 1952, 59 So.2d 528, our Supreme Court denied the motion for leave to file an extraordinary petition for rehearing and then proceeded, on its own motion, to reconsider the case and to remand it.
Our impression has been that the staff of the Attorney General in his Tampa office is now too small adequately to brief the cases pending in this court, and we doubt that the State will pursue this case further. In case it does, however, we want to say a few things about it.
One witness to the crime charged testified. Her testimony takes up 13 pages in the transcript. Two witnesses testified that Davis committed another robbery at another time, in another place, in another manner  that time he was disguised in a pair of women's bikini panties, worn as a mask. We cannot see one single common element in these two crimes. Testimony of the extraneous offense was presented through two witnesses, and takes up 25 pages in the transcript. It clearly became a "feature" of the trial. See Green v. State, Fla.App.2d 1969, 228 So.2d 397.
We are the recipients of a great number of frivolous appeals. They cannot  and should not  be discouraged by any means which may suggest that a convicted American is without the right to judicial review. We do wish those who file these appeals had a few minutes of a lawyer's time to gain an understanding of the futility of appeal where the question is essentially one of fact, or of some established legal principle. But what bothers us most is that prosecutors are constantly overprosecuting cases. That means a flood of avoidable appeals which take more time and expense and in almost all of these cases a steady stream of impeccably correct evidence, represented without excessive emotion to the jury, would result in conviction unassailable on appeal. In this case, for *849 example, the woman who was robbed saw Davis on two occasions that day, remembered exactly what he wore, observed him for at least three minutes and positively identified him as the robber. Not one element of her testimony is reinforced in any way by the evidence of the extraneous offense. The excessive resort to evidence of other crimes is a prime source of overprosecution.[1]
It is timely to remember the facts in the case which gave the Williams Rule its name:[2] Williams, charged with rape, asserted that the victim consented. Her testimony was that he had hidden in her car while it was parked in Webb's City parking lot and had raped her. When he was apprehended he told the officers  so they testified  that he thought that the car was his brother's and had crawled into the back seat to take a nap. At the trial, he denied making this statement, and told how she consented. Another witness, whose testimony was objected to, testified that she had parked her car, which was a different make from that of the victim's, in almost the same spot some six weeks before. When returning to the car, she saw a man's head on the floor. She screamed. Williams ran but was immediately apprehended. He told the same story about thinking it was his brother's car. It is apparent that the witness' story was relevant to the question whether the victim had consented. Thus the two incidents, in both of which he told officers that he thought a car was his brother's and went in to take a nap, and in both of which he had the rather obvious purpose of molesting a young girl, tended to show the truth about a question in issue. Mr. Justice Thornal's opinion in Williams is so clear that we commend it and the cases cited therein to the State's attorneys in the hope that they will regain the understanding of the law which their zeal tends to suppress in the trial of cases. Mr. Justice Thornal explains that "The question to be decided is not whether the evidence tends to point to another crime but rather whether it is relevant to the crime charged." 110 So.2d at 663. The testimony allowed here is utterly irrelevant to any issue involved in the crime charged. It tended to show clearly enough that Davis was the robber on the second occasion, but not on the first. The prosecutor's assertion that it tended to show identity is thus a gross misconception of the law.
If perchance the State's insistence on this technicality shall culminate in the reversal of our decision, Davis should file in this court a petition for habeas corpus pursuant to Baggett v. Wainwright, Fla. 1969, 229 So.2d 239, seeking delayed appellate review. Certainly the performance he got from his appointed, State-paid counsel is as close to no review as is possible to get. Should that expedient fail, Davis' case might conceivably wind up in federal court, where he surely could maintain the contention that he has been deprived of due process, as in Anders v. California, 1967, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493. But sooner or later, Davis is going to get a fair trial. From the standpoint of the public as well as Davis, it ought to be sooner.
We have emphasized lately that convictions ought not be reversed on account of non-prejudicial technicality. In effect, what we are saying in Judge Liles' opinion and in this denial of rehearing is that patently invalid convictions ought not be affirmed on the basis of technicalities which cannot in the end thwart effective appellate review once the appellant gets the due process to which he is entitled.
LILES, J., concurs.
PIERCE, J. (Ret.), concurs in denial of rehearing.
NOTES
[1] See Simmons v. Wainwright, Fla.App.1st 1973, 271 So.2d 464.
[2] Williams v. State, Fla. 1959, 110 So.2d 654.