**Joe B. BYRD, Appellant,**

v.

**Lewis Miller SMYTH, III, et al., Appellees.**

No. 6878.

Court of Civil Appeals of Texas, El Paso.

Nov. 7, 1979.

Sellers & Berg, P. C., Larry R. Jones, George V. Berg, Jr., Michael G. Tapp, Houston, for appellant.

Clemens, Spencer, Welmaker & Finck, F. Nolan Welmaker, George H. Spencer, Jr., San Antonio, for appellees.

## OPINION

WARD, Justice.

The dispute in this case arose when a joint venture sold its assets and made a distribution of shares. The issue on this appeal is the meaning to be given to a contract when it is stated that one member's interest would be considered as "carried interest." The trial Court, without the aid of a jury, determined that the one owning the carried interest, although not having had to advance certain expenses of the venture during its existence, would be burdened with his share of the expenses when the final distribution was made. Findings of fact and conclusions of law were filed. We affirm the judgment of the trial Court.

The J.S.H.F. Joint Venture was formed by the four Defendants to the present law suit, and the Venture then purchased a 5,000 acre tract of land in Kinney County. In May, 1975, the four owners of the Joint Venture entered into an agreement with Plaintiff, Joe B. Byrd, to settle an existing law suit involving the title to the land. The settlement required that the four members of the Joint Venture would each convey a 5% interest in the Joint Venture to Byrd so that each assignor and Byrd would thereafter own a 20% interest in the Joint Venture. Thereafter, an "Assignment of Interest in J.S.H.F. Joint Venture" dated June 24, 1975, was prepared and executed by the five parties to the present law suit. The assignment provided that the assignors assigned to Joe B. Byrd an undivided 20% interest in and to the Joint Venture, and a copy of the Joint Venture Agreement was attached to the assignment and made a part thereof for all purposes. The assignment further provided: "Each party Assignor therefor[e] assigns and intends to assign an undivided 5% to Assignee so that each Assignor hereafter will own a 20% interest in said Joint Venture and Assignee will own a 20% interest therein, pursuant to all of the terms and conditions of the Joint Venture Agreement, . . ." The assignment terminated with the following paragraph:

However, it is understood and agreed by and between Assignors and Assignee herein that the assignments by Assignors of an undivided 5% each to Assignee shall be considered to be a carried interest, that is, Assignee shall not be expected to pay any portion of any payments required of the J.S.H.F. Joint Venture, unless it becomes necessary under the terms of the Joint Venture Agreement to purchase the interest of one or more Joint Venturers. In such case JOE B. BYRD shall have equal rights with the remaining Joint Venturers to purchase his proportionate share of the interest being disposed of by the withdrawing Joint Venturer.

When the Joint Venture was formed, it was contemplated that contributions by the members would be necessary to make principal and interest payments on the loan which was taken out to finance the purchase of the property, as well as to pay the taxes on the property. To provide for the contributions, the Joint Venture Agreement provided that the manager of the Joint Venture would estimate the cash requirements for a period of three months in advance and request payment of each Joint Venturer's proportionate share of the estimated cash payments, and each Joint Venturer would pay said amount within ten days after receiving a statement therefor. The Agreement also provided that, upon termination of the Joint Venture for any reason, the assets of the Joint Venture would be sold and the proceeds would be applied first to the return to the Joint Venturers of any cash capital contributions made by them, and the remaining assets

774

would be distributed to the persons who were then Joint Venturers under the agreement and in accordance with their percentages of ownership. This termination article also provided as follows:

As between the Joint Venturers, each shall be responsible for his proportionate part of all debts and liabilities applicable to properties distributed under this paragraph, and upon default in the payment of such debts and liabilities by any Joint Venturer, the remaining Joint Venturers who pay or discharge the same shall have, in addition to any other rights or remedies provided by law, an equitable lien upon all assets distributed to the defaulting Joint Venturer to secure the payment of the amounts so advanced.

In 1976, the Joint Venture sold all of the land at a profit, and, following the sale, an accountant prepared a statement showing the proceeds from the sale, the various debts and expenses burdening those proceeds, and the amount due each Joint Venturer from the sale. Consistent with that statement, payments were made to the four Defendants for payments made by them during the Joint Venture and then each Joint Venturer, including Byrd, was sent a check for $34,778.88. Byrd was dissatisfied with his share and brought the present suit for a greater amount, arguing that, since he was to have a "carried interest," the legal expenses, taxes, principal and interest payments and closing costs accruing from the time of the creation of the Venture until its termination should not have been assessed against his share. By his calculations, this would increase the amount due him by some $42,000.00.

As stated, a take nothing judgment was entered against Byrd, the Court finding that the Plaintiff's interest was expressly made subject to all the terms and conditions of the Joint Venture Agreement, except that the Plaintiff was not required to advance any portion of the expenses until the termination of the Agreement when his share would be assessed advances made on his behalf, and that during the operation of the Joint Venture Agreement, the four De-

fendants would advance the Plaintiff's share of contributions but, upon termination and distribution, the share so advanced would be reimbursed to the persons advancing the same. The Court further found that "carried interest" meant that the Plaintiff would not have to advance sums of money but, upon distribution of the money upon the termination of the Joint Venture Agreement, reasonable and necessary sums advanced by or which were to be advanced by other parties to the Joint Venture would be reimbursed to those Joint Venturers prior to the distribution of the shares. The Court was of the opinion that the contract was unambiguous, but found in the alternative that, if the contract was ambiguous, parol evidence offered by the Defendants established the agreement of the parties to be that "carried interest" meant that the Plaintiff would not have to advance any sums of money while the Joint Venture was in existence but that, upon final termination of the Joint Venture Agreement, the reasonable and necessary sums advanced or to be advanced by the other parties would be reimbursed to those Joint Venturers prior to the distribution of the shares.

The Appellant's first point is that the trial Court erred as a matter of law in its construction or interpretation of the agreement, while his third and fourth points are that the trial Court erred in its alternative holding that the written agreement was ambiguous and in permitting the introduction of parol evidence to explain the meaning of "carried interest." The Appellant argues that the wording in the assignment contract that his share was a "carried interest" and that he "shall not be expected to pay any portion of any payment required of the J.H.S.F. Joint Venture" for all time freed his share from the expenses incurred by the Joint Venture and that the termination article did not apply to his share.

We overrule these points as the trial Court could have received testimony on the meaning of "carried interest." It is a technical term adopted from the oil industry and was used in a contract concerning a

speculative real estate venture. The evidence offered was not parol evidence which tended to vary the terms of the written contract, but was explanatory of a technical term used in the assignment. This type of testimony has been consistently permitted. *Sivert v. Continental Oil Company*, 497 S.W.2d 482 at 489 (Tex.Civ.App.—San Antonio 1973, writ ref'd n. r. e.); 2 McCormick & Ray, Texas Law of Evidence (2d ed.) sec. 1685. As used in the oil industry, the holder of a carried interest of a working interest has no personal obligation for operating costs while the co-owners who advance such costs are entitled to reimburse themselves first from future production. 38 Am.Jur.2d Gas and Oil sec. 179 at 660; Williams & Meyers, Oil and Gas Law, Manual of Terms, at 66. As the term was used here, it meant that the co-owners who advanced expenses were entitled to reimburse themselves first from the profits of the venture before equal distribution to all shareholders was made. This meaning was explained to the Appellant, and the testimony was that he was then in complete agreement. The trial Court adopted this explanation in its interpretation of the assignment and of the Joint Venture Agreement. We are in accord with that conclusion.

The Appellant's second point is that the trial Court erred in not making certain amended findings of fact and conclusions of law as suggested by the Appellant. The Appellant delayed his request for nine days after the original findings of fact and conclusions of law had been filed, and the request was not timely. No error is presented and the point is overruled. Tex. R.Civ.P. 298.

The Appellant's sixth point is that the trial Court erred in holding that the Appellant was a Joint Venturer since the assignment was made subject to the terms and conditions of the Joint Venture and there was no showing that the parties ever consented to his being an actual partner or actual Joint Venturer. See Article 6132b sec. 18(1)(g), Tex.Rev.Civ.Stat.Ann. The assignment was signed by all five parties, and whether he actually became a member

of the Joint Venture is not in issue. It would have no bearing on the amount of money that he was entitled to when the distribution was made upon termination. The point is overruled.

Whether we have mentioned them or not, we have considered all of the points presented and they are all overruled. The judgment of the trial Court is affirmed.