(932 P.2d 1012)
No. 73,483

STATE OF KANSAS, *Appellee*, v. NATHANIEL MITCHELL, *Appellant*.

—

Opinion
filed January 31, 1997.

*Michael J. Helvey*, assistant appellate defender, and *Steven R. Zinn*, deputy appellate defender, for appellant.

*Jerome A. Gorman*, assistant district attorney, *Nick A. Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before GERNON, P.J., ELLIOTT, J., and THEODORE B. ICE, District Judge, assigned.

ICE, J.: The defendant, Nathaniel Mitchell, appeals his conviction of unintentional second-degree murder, contrary to K.S.A. 21-3402(b), after a jury trial on September 2, 1994.

Briefly stated, defendant, Linda Dodson, and the victim, Josey Hunter, were traveling to a destination near the University of Kansas Medical Center. Defendant was in the passenger seat, Hunter was in the back seat, and Dodson was driving. An argument arose over defendant's purchase of stolen baby clothes from Hunter, who wanted payment from defendant immediately. Defendant refused to give Hunter the money.

Defendant testified that during the trip, Hunter snatched money out of his hands, and he reached over the back seat, grabbed the money back, and pushed Hunter back. Thereupon, Hunter began to kick defendant and grabbed the steering wheel, causing the car to crash into a pole. Defendant testified that his head hit the windshield. He then got out of the car, feeling dazed and dizzy, while Hunter continued to kick at him. Defendant further testified that he began to move away from the car but returned to help Dodson, and, as he reached into the car, he saw Hunter getting up from the back seat pointing a gun at him. Defendant testified he was afraid for his life and thought he was going to be shot, whereupon he pulled out his own gun, closed his eyes, and began shooting.

Hunter died the next day from the gunshot wound. Defendant's gun was the only one found at the scene. It had three casings in it. However, four witnesses testified they heard at least four shots. Defendant further testified that Hunter did not have a gun when she got into the car but that Dodson carried a gun in her purse. Defendant further testified that Dodson had told him the gun had been in her purse and that it was the gun that Hunter had used. He also testified that Dodson removed the gun from the scene because having it would have been a parole violation, and she feared losing her children.

Defendant testified he shut his eyes while shooting and did not know whether he shot Hunter. He left the scene to protect himself from both Hunter and the police and was later apprehended near the scene. Other witnesses testified they saw defendant get out of

the wrecked car, move away, and then turn around to retrace his steps and fire into the car.

At the instruction conference, the district court determined that instructions on first-degree murder and the lesser included offenses of intentional second-degree murder, unintentional second-degree murder, and voluntary manslaughter should be given. The district court denied defense counsel's request for an instruction on involuntary manslaughter.

At the motion for a new trial, defense counsel renewed his objections to the instructions and claimed the definition of unintentional second-degree murder was unconstitutionally vague. This motion was denied by the district court.

I. Did the district court commit reversible error in failing to give a lesser included offense instruction for involuntary manslaughter?

When considering the refusal of the district court to give a specific instruction requested by a defendant, the evidence must be viewed by the appellate court in the light most favorable to the defendant. *State v. Scott*, 250 Kan. 350, Syl. ¶ 4, 827 P.2d 733 (1992).

If there is substantial evidence upon which the defendant might reasonably have been convicted of a lesser offense, an instruction on the lesser included offense is required. *State v. Shannon*, 258 Kan. 425, 427, 905 P.2d 649 (1995). Evidence supporting the instruction of a lesser included offense may be presented either by the defendant or by the State. *State v. Coleman*, 253 Kan. 335, 354, 856 P.2d 121 (1993). Even the unsupported testimony of the defendant alone, if tending to establish such lesser offense, is sufficient to require the district court to so instruct. *State v. Harmon*, 254 Kan. 87, Syl. ¶ 1, 865 P.2d 1011 (1993). The failure to give a lesser included offense instruction on involuntary manslaughter when the evidence supports the request is reversible error. See *State v. Warren*, 5 Kan. App. 2d 754, 758, 624 P.2d 476, *rev. denied* 229 Kan. 671 (1981).

Involuntary manslaughter is the unintentional killing of a human being committed during the commission of a lawful act in an unlawful manner. K.S.A. 21-3404(c).

As in this case, in *State v. Clark*, 218 Kan. 18, 23, 542 P.2d 291 (1975), the defendant testified that he was confronted by the victim pointing a gun at him. The defendant's reaction in both cases was to shoot back. In *Clark*, the Supreme Court considered whether an involuntary manslaughter instruction should have been given and answered in the affirmative, finding that a jury could find the defendant justified in pointing a gun in self-defense but that the discharge of the weapon was the result of unlawful or wanton conduct. A similar finding was made in *State v. Griblin*, 12 Kan. App. 2d 677, 678-79, 753 P.2d 843 (1988). Under the facts in the instant case, there was also evidence of an unexplained fourth gunshot.

A jury could have found that Hunter, not defendant, was the initial aggressor. The evidence presented in the instant case supports the giving of an instruction on involuntary manslaughter. The trial court's failure to give this instruction constitutes reversible error.

II. Did the district court abuse its discretion in denying defendant's motion for a new trial?

A. Is K.S.A. 21-3402(b) unconstitutional?

Defendant argues that the phrase "extreme indifference to the value of human life" in K.S.A. 21-3402(b) is unconstitutionally vague. He further contends that due to that vagueness, the statute is nearly indistinguishable from language defining involuntary manslaughter.

The constitutionality of a statute is a question of law, and appellate review is unlimited. See *State v. Dorsey*, 13 Kan. App. 2d 286, 287, 769 P.2d 38, *rev. denied* 244 Kan. 739 (1989).

K.S.A. 21-3402(b) defines second-degree "depraved heart" murder as follows: "Murder in the second degree is the killing of a human being committed . . . unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life."

K.S.A. 21-3404(a) defines involuntary manslaughter as "the unintentional killing of a human being committed . . . [r]ecklessly."

K.S.A. 21-3201(c) provides: "Reckless conduct is conduct done under circumstances that show a realization of the imminence of

danger to the person of another and a conscious and unjustifiable disregard of that danger."

The test to determine whether a statute is void for vagueness is

" 'whether [the statute's] language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. A statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process.' " *State v. Adams*, 254 Kan. 436, 439, 866 P.2d 1017 (1994) (quoting *State v. Dunn*, 233 Kan. 411, 418, 662 P.2d 1286 [1983]).

The *Adams* court noted that another appropriate inquiry is " ' "whether the [statute] adequately guards against arbitrary and discriminatory enforcement." ' " 254 Kan. at 439 (quoting *City of Wichita v. Wallace*, 246 Kan. 253, 259, 788 P.2d 270 [1990]).

A statute is presumed constitutional, and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the appellate court must do so. *Boatright v. Kansas Racing Comm'n*, 251 Kan. 240, 243, 834 P.2d 368 (1992). An appellate court has a duty to construe a statute in such a manner that it is constitutional if the same can be done within the apparent intent of the legislature in passing the statute. *State v. Durrant*, 244 Kan. 522, 534, 769 P.2d 1174, *cert. denied* 492 U.S. 923 (1989).

The issue of the constitutionality of the Kansas depraved heart murder statute has not previously been decided by a Kansas appellate court. However, several other jurisdictions have addressed the identical question. No jurisdiction has found a depraved heart murder statute unconstitutional. The New Hampshire Supreme Court addressed this issue in *State v. Dow*, 126 N.H. 205, 489 A.2d 650 (1985). The *Dow* court ruled that New Hampshire's depraved heart murder statute, which uses the identical language at issue in the present case, was not unconstitutionally vague. The *Dow* court's decision is well-reasoned:

"We now turn to the defendant's claim that the phrase 'extreme indifference to the value of human life' is unconstitutionally vague. 'A criminal statute is void for vagueness if it "forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as

to its application.' " *State v. Chaisson*, 123 N.H. 17, 26, 458 A.2d 95, 100 (1983) (quoting *State v. Albers*, 113 N.H. 132, 133, 303 A.2d 197, 199 (1973)). Mathematical exactness is not required in a penal statute, nor is a law invalid merely because it could have been drafted with greater precision. *State v. Hewitt*, 116 N.H. 711, 713, 366 A.2d 487, 488 (1976).

"The words 'extreme indifference to the value of human life' are easily understood. They are the equivalent of what is sometimes referred to as 'depraved heart murder,' which has long been part of the law. See Report of Comm. to Recommend Codification of Criminal Laws, comments to § 575:1 (murder) (1969); Model Penal Code § 210.2, comment 4, at 22 (1980).

"Both the second degree murder statute, RSA 630:1-b, I(b), and the manslaughter statute, RSA 630:2, I(b) (Supp. 1983) require proof that a defendant caused the death of another 'recklessly' as that term is defined in RSA 626:2, II(c). The second degree murder statute, however, requires proof of the additional element that the death be caused 'under circumstances manifesting an extreme indifference to the value of human life.' RSA 630:1-b. As we previously have stated:

" 'Circumstances manifesting an extreme indifference to the value of human life' means something more than merely being aware of and consciously disregarding a substantial and unjustifiable risk. 'If the advertence [to the risks involved] and the disregard are so blatant as to manifest extreme indifference to life, then the offense is murder . . .' Thus where the accused's behavior 'constitutes a gross deviation' from law-abiding conduct, RSA 626:2, II(c), but does not manifest 'an extreme indifference to the value of human life,' RSA 630:1-b I(b), the jury may properly find only manslaughter. Where, however, the evidence supports the additional element of 'extreme indifference,' the jury may find murder in the second degree. The existence and extent of disregard manifested is a factual determination to be made by the jury.'

*State v. Howland*, 119 N.H. 413, 416, 402 A.2d 188, 191 (1979) (quoting Report of Comm. to Recommend Codification of Criminal Laws, comments to § 575:2 (manslaughter) (1969)) (citations omitted)." 126 N.H. at 206-07.

See also *Waters v. State*, 443 A.2d 500, 506 (Del. 1982) ("the words 'cruel, wicked and depraved indifference to human life' are words with a commonly accepted meaning" that is not unconstitutionally vague); *State v. Flick*, 425 A.2d 167, 173-74 (Me. 1981) (depraved indifference murder statute not unconstitutionally vague); *Windham v. State*, 602 So. 2d 798, 800-01 (Miss. 1992) (depraved heart murder and culpable negligence manslaughter were distinguishable by degree of mental state of culpability); *People v. Poplis*, 30 N.Y.2d 85, 89, 330 N.Y.S. 2d 365, 281 N.E.2d 167 (1972) (statute proscribing conduct evincing a depraved indifference to human life

is sufficiently definite and the kind of conduct prescribed is sufficiently laid out to sustain a valid penal sanction); *State v. Primeaux*, 328 N.W.2d 256, 258 (S.D. 1982) (second-degree murder statute proscribing " 'any act imminently dangerous to others and evincing a depraved mind' " not subject to uneven application and interpretation and gives fair notice of conduct forbidden).

We hold the phrase "extreme indifference to the value of human life" is easily understood, and the depraved heart murder statute is not unconstitutionally void for vagueness.

Defendant also argues that the legislature intended that unintentional second-degree murder would apply to the type of killing resulting from an indifference to human life in general, while involuntary manslaughter would continue to apply to the type of killing resulting from a disregard of imminent danger to a particular person. The fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *City of Wichita v. 200 South Broadway*, 253 Kan. 434, 436, 855 P.2d 956 (1993). The legislature has given us a clue as to its intent in creating K.S.A. 21-3402(b). The Supplemental Note on S.B. 358 explained:

"The crime of second degree murder . . . is expanded to include unintentional but reckless killings under circumstances manifesting an extreme indifference to the value of human life—the so-called 'depraved heart' murder which would include firing an automatic weapon into a crowded restaurant or a crowd of people on a street corner. The majority of states and the Model Penal Code recognize this category of murder. Without such a category of murder, extremely reckless killings likely can only be charged as involuntary manslaughter."

While the examples given support defendant's argument, the final sentence of this statement apparently places the distinction on the degree of recklessness, however, as opposed to the direction of the violence. In support of his proposition, defendant cites cases from two other jurisdictions which found that the depraved heart murder statutes were intended for crimes directed not at a particular individual, but at humanity in general. See *Ex Parte Washington*, 448 So. 2d 404, 408 (Ala. 1984); *Massie v. State*, 553 P.2d 186, 191 (Okla. Crim. 1976). While *Washington* does support defendant's proposition, the statutory language at issue in *Massie* is dis-

tinguishable, specifically stating, "without any premeditated design to effect the death of any particular individual." 553 P.2d at 191.

The State, on the other hand, points to *Windham v. State*, 602 So. 2d 798, where the Mississippi Supreme Court addressed a similar challenge to the constitutionality of the depraved heart murder statute. That court found that depraved heart murder and culpable negligent manslaughter are distinguishable by the higher degree of recklessness required. 602 So. 2d at 801. The *Windham* court acknowledged but rejected the traditional view that "death which resulted from a reckless act directed toward a *particular* individual would not be deemed to be within the scope of depraved heart murder statutes." 602 So. 2d at 802. The *Windham* court went on to note the evolution of the traditional view that, in many jurisdictions, has come to include acts which pose risks to only one individual. See, *e.g.*, *DuBose v. Lefevre*, 619 F.2d 973 (2d Cir. 1980) (victim's death resulted from beating); *People v. La Mountain*, 155 App. Div. 2d 717, 547 N.Y.S.2d 430 (1989) (victim's death resulted from repeated punching and stomping).

The evolution of the traditional view to include instances where the conduct is directed towards a particular individual seems appropriate. The distinction between depraved heart murder and involuntary manslaughter occurs in the degree of recklessness, not in the direction of the violence.

The State also argues that defendant lacks standing to raise this issue because the alternative of involuntary manslaughter involving recklessness is not involved in the case. Defendant does have standing to raise the argument simply because he was charged with depraved heart murder.

Finally, the State argues that even if both statutes are held to proscribe the same conduct, the second-degree murder proscription should be viewed as the more specific. In such cases, the court has ruled the more specific statute to be controlling. See *State v. Goodnow*, 12 Kan. App. 2d 294, 296, 740 P.2d 113, *rev. denied* 242 Kan. 904 (1987). In this case, the State argues, the unconstitutional statute would be the involuntary manslaughter statute. In light of the above analysis, this point is moot.

B. Was the evidence sufficient to support defendant's conviction?

Because this court has determined that defendant's actions, which were directed toward a particular individual as opposed to a group, constitute grounds for conviction, this argument is moot.

III. Did the district court err in ruling evidence that Linda Dodson always carried a gun in her purse was inadmissible?

Rulings on the admissibility of evidence fall within the sound discretion of the district court. A party attacking the ruling must show abuse of discretion. The district court abuses its discretion only when no reasonable person would take the view adopted by the trial court. *Enlow v. Sears, Roebuck & Co.*, 249 Kan. 732, 740, 822 P.2d 617 (1991).

Defendant argues that Linda Dodson's brother, Joe Jones, should have been allowed to testify regarding Dodson's custom and habit of carrying a gun in her purse. Defendant argues that the testimony was admissible under K.S.A. 60-446, K.S.A. 60-447, and K.S.A. 60-448, as well as K.S.A. 60-449.

The testimony in question was proffered through Joe Jones, Linda Dodson's brother. He proffered that he and his sister were not particularly close. During the time in question, Jones was in inpatient drug treatment and had no direct knowledge of his sister's practices. He also was being lodged in the same pod in the Wyandotte County Jail as defendant. Jones also admitted to having been convicted of felony theft. These circumstances raise serious questions as to the credibility of the proffered testimony. It cannot be said that no reasonable person would agree with the decision of the district court.

The case is reversed and remanded for a new trial for inclusion of a lesser included offense jury instruction on involuntary manslaughter.