(962 P.2d 1104)

No. 76,952

STATE OF KANSAS, *Appellee*, v. JOSEPH SCOTT STUBER, *Appellant*.

Opinion filed July 2, 1998.

*Steven R. Zinn*, deputy appellate defender, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*Doyle Baker*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before LEWIS, P.J., PIERRON, J., and JACK L. BURR, District Judge, assigned.

LEWIS, J.: In 1990, defendant and a business associate formed a corporation, which they named Agri-Data. After forming the corporation and investing approximately $80,000 of their own money, defendant and his associate set out to raise more money for the venture primarily by selling stock in the corporation. Ultimately,

Agri-Data went broke, and the investors lost all or most of their money. Defendant was prosecuted for several violations of the securities laws. He was convicted by a jury of one count of engaging in business as a broker/dealer without having been registered, one count of offering for sale unregistered securities, and two counts of unlawful acts in connection with the sale of securities. As a result of the convictions, defendant was sentenced to 2 to 5 years in the penitentiary and was ordered to pay restitution in the amount of $1,532,000 to Mark Thomas and $113,000 to Fannie Jones. Defendant appeals his sentence and convictions.

The facts are involved and, at times, confusing. We will attempt a brief recitation of those facts and, as necessary, will add detail in our opinion.

Agri-Data was incorporated by defendant and his business associate in 1990. Its original purpose was to provide fertilizer products and related services to farmers. One of its services was to advise clients on marketing strategy. Unfortunately, defendant paid too much attention to his own advice; Agri-Data began commodity trading and experienced severe losses, which ultimately led to Chapter 7 bankruptcy. Indeed, at one point, one of the investors found that the losses he had been covering, which he thought were those of the corporation, were in fact losses incurred by defendant in his personal account.

Vic Carter was hired by the company within a few months after it was formed. He was paid $1,500 per month in deferred compensation, which he later converted into stock.

Defendant argues that Carter was simply being paid to be the company's treasurer. The State contends that Carter was being paid for finding investors and selling securities. The evidence on this issue is conflicting, but the fact is, Carter obtained money from Fannie Jones and Don Peniston. These individuals received stock in exchange for their contributions. Jones invested $103,300, and Peniston invested $12,000.

Mark Thomas was a childhood acquaintance of defendant. Defendant knew that Thomas had sold his interest in a Coca Cola plant in Idaho and went to Idaho to convince Thomas to invest in Agri-Data. Defendant was successful; Thomas invested in the cor-

poration and he continued to invest until he lost $1,532,000. Indeed, in order to make his investments, Thomas eventually cashed in his life insurance policy.

Defendant raises several issues on appeal.

## SALE OF SECURITIES TO FANNIE JONES

In 1986, defendant pled guilty to gambling while placing a bet on a baseball game. In addition, also in 1986, defendant was convicted of two felony counts of giving a worthless check. Defendant's associate, Clayton Albers, had also been convicted of theft in South Dakota and had served time in prison.

At the time Fannie Jones decided to invest in the company, defendant failed to disclose to her the existence of his and Albers' criminal convictions. This failure, the State charges, was an unlawful act. In this connection, Jones testified that had she known defendant had been convicted of crimes, she might not have invested in the company.

The instruction given to the jury on this issue is illustrative as to what the State was required to prove:

"1. That the defendant sold or offered to sell a security to Fannie Jones;

"2. That the defendant omitted to state a material fact necessary in order to make the statements which were made, in light of the circumstances under which they were made, not misleading:

"3. Specifically, that defendant failed to disclose to Fannie Jones:

"A. The criminal background of Clayton Albers and J. Scott Stuber, including:

. . . .

"The defendant admits the matter in Number One and Number Three . . . above.

"As to the matter in Number Two above, the State must prove that all or any one of the items set out in 3.A.(1), (2) and (3) were 'material'. Such proof must be beyond reasonable doubt.

"A 'material' fact is one that relates to some matter which is so substantial and important as to influence a reasonable prudent person.

"If you find that the State has not proven that one or more of the items set out in 3.A.(1), (2) or (3) were 'material', you should find the defendant not guilty of the charge in count Number Three.

"If you find the State has proven that any of the items set out in 3.A.(1), (2) or (3) were 'material', you should find the defendant guilty of the charge in count Number Three.

"Your finding should be set out on the verdict form."

The charge against defendant, if true, is a violation of K.S.A. 1997 Supp. 17-1253, which provides in pertinent part:

"(a) It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly, to:

. . . .

(2) make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading."

The question is whether defendant's failure to disclose his criminal convictions to Jones amounts to the omission of a material fact. In resolving this question, we must determine whether a broker under the Kansas Securities Act, K.S.A. 17-1252 *et seq.*, is required to reveal a criminal past, which includes crimes of dishonesty, in selling stock to an investor. Put another way, did defendant's failure to disclose his and his associate's criminal convictions make the statements to Jones misleading?

To a certain extent, the failure to disclose the convictions cannot be said to have been misleading. At no point does the record indicate that defendant told Jones that he was a reputable, trustworthy, or skillful financial manager. Had defendant made such a statement, his failure to disclose his convictions for crimes of dishonesty clearly would have been misleading. Despite this fact, Jones testified that had the convictions been disclosed, she would have been suspicious of what defendant had told her. If we believe Jones, as the jury must have done, we can only conclude that the failure to disclose the convictions was quite material to her.

In the final analysis, we must determine whether K.S.A. 1997 Supp. 17-1253(a)(2) requires the disclosure to an investor of any information that would make an ordinary investor wary and suspicious of the person making the sale. We cannot imagine that some investors would not become wary and suspicious if they were told that the seller of the investment opportunity had been convicted of crimes involving dishonesty.

In this case, the misleading or omitted information related to the sellers of the securities. In most of the cases in which 17-1253 has been involved, misleading or omitted information has related to the condition of the company. See *Basic Inc. v. Levinson*, 485

U.S. 224, 227-28, 99 L. Ed 2d 194, 108 S. Ct 978 (1988); *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 48 L. Ed 2d 757, 96 S. Ct. 2126 (1976); *Allen v. Schauf*, 202 Kan. 348, 449 P.2d 1010 (1969); *State v. Puckett*, 6 Kan. App. 2d 688, 634 P.2d 144 (1981), *aff'd* 230 Kan. 596, 640 P.2d 1198 (1982). Despite this history, we have no hesitancy in holding that the misleading or omitted statements may relate to the person making the sale of the security and still be a violation of 17-1253(a)(2).

In interpreting a statute, our primary goal is to give it the effect the legislature intended. *In re Application of Zivanovic*, 261 Kan. 191, Syl. ¶ 1, 929 P.2d 1377 (1996). "The purpose of the Kansas Securities Act is to place the traffic of promoting and dealing in speculative securities under rigid governmental regulation and control to protect investors, thereby preventing, so far as possible, the sale of fraudulent and worthless speculative securities." *Activator Supply Co. v. Wurth*, 239 Kan. 610, 615, 722 P.2d 1081 (1986).

We conclude that permitting the seller of speculative securities to fail to disclose his or her convictions for crimes involving dishonesty could not possibly comport with the intent of the Kansas Securities Act. We believe that in order to carry out the stated purpose of the Kansas Securities Act, a seller of securities must disclose his or her criminal history to prospective buyers of the security. In the sale and purchase of securities, the honesty and integrity of the seller is of utmost importance. While having a criminal record may not necessarily mean the seller is dishonest and untrustworthy, it is certainly material in giving the buyer sufficient information to make a judgment on the facts he or she is told by the seller. We hold that a seller of securities commits an unlawful act in connection with that sale, under K.S.A. 1997 Supp. 17-1253(a)(2), by failing to disclose his or her criminal history to a prospective buyer, particularly when that history consists of convictions for crimes of dishonesty. A seller of securities under the Kansas Securities Act is intended to be an individual on whom the buyer may rely. This is an appearance which is made misleading by the failure of the seller to disclose his or her criminal background.

We affirm defendant's conviction of having committed an unlawful act in connection with the sale of a security to Jones.

## DEFENSE TESTIMONY

Defendant was also convicted of an unlawful act in connection with the sale of stock to Mark Thomas. Defendant neglected to advise Thomas of his prior criminal convictions and those of his business associate and further neglected to advise Thomas that he was diverting funds from his personal account to the corporate trading account. Of course, at the time, defendant was losing large sums of money in his personal trading account.

We believe that our comments above could equally be made with regard to the Thomas matter. Accordingly, we affirm defendant's conviction on the commission of an unlawful act in the sale to Thomas. Thomas testified that had he known of defendant's criminal background, he would have been wary and suspicious. Defendant's failure to disclose that background was a failure to disclose a material fact which made the statements to Thomas misleading.

Defendant next argues the trial court erred in refusing to allow the testimony of John Hershey. Hershey worked for Agri-Data for a period of time and, while he did so, he loaned the company $60,000. Hershey was prepared to testify that he knew about defendant's prior convictions at the time he invested and that he did not consider it material to his decision to loan the company money.

When Hershey was asked if he believed the prior convictions were material information, the State objected, and the objection was sustained.

Rulings on the admissibility of evidence fall within the sound discretion of the trial court. One attacking an evidentiary ruling must show an abuse of discretion. An abuse of discretion exists only when no reasonable person would take the view adopted by the trial court. *Cessna Aircraft Co. v. Metropolitan Topeka Airport Authority*, 23 Kan. App. 2d 1038, 1055, 940 P.2d 84, *rev. denied* 262 Kan. 959 (1997).

The materiality of the information was tested by the peculiar circumstances under which it was given or admitted. Those cir-

cumstances are personalized and varied greatly as to Hershey on the one hand and Thomas and Jones on the other.

The question was whether a reasonable investor in the circumstance of Jones or Thomas would have considered defendant's past convictions material. The trial court ruled that Hershey's opinion on the subject was irrelevant because he formed that opinion under greatly different circumstances.

We agree. Hershey was a long-time friend and business associate of defendant. Hershey worked for Agri-Data and, while doing so, loaned it $60,000. Hershey was clearly looking at matters from a different viewpoint than Jones and Thomas. Jones did not know defendant at all, and Thomas' acquaintanceship was from their childhood. Thomas put more than $1.5 million into the company; Jones, more than $100,000; and Hershey, $60,000.

We conclude that under the evidence shown, Hershey's opinion as to the materiality of the convictions was not relevant in deciding whether a reasonable investor in the circumstances of Jones or Thomas would have found the convictions significant. In addition, even if we were to assume the trial court erred, the error would be harmless only.

Defendant next argues he was denied a fair trial because the State was allowed to permit the testimony of Jones and Thomas while the testimony of Hershey was deemed inadmissible.

An examination of the record shows that when Jones testified, she testified she likely would not have invested had she known about the convictions. Defendant failed to object to this line of testimony and is in no position to now argue that the trial court allowed testimony to which he failed to object.

## A WORTHLESS CHECK CONVICTION

At trial, defendant testified to the facts that led to his prior conviction for issuing worthless checks. He said, in essence, that he has not paid the checks because his attorney told him not to do so. He then called the attorney as a witness and asked him if he had advised defendant not to pay the checks in question. The State objected, and the trial court sustained the objection.

On appeal, defendant argues the trial court erred in not allowing his attorney to testify. He insists that this testimony was relevant on the issue of whether his failure to disclose the conviction was material.

We agree with the trial court. The important fact at issue was the fact that defendant had been convicted of giving worthless checks. That is the information which the purchasers of the stock needed, and that is the information they were not given. It is really of little relevance why defendant was convicted. He was convicted, and those convictions stand. We hold the motives or reasons of defendant for refusing to pay the checks in question did not result in the failure to disclose it to the buyer as being not material. Defendant's convictions, which should have been disclosed, were not lessened or eliminated by the lawyer's advice. The trial court did not err in refusing to permit the testimony in question.

## INSTRUCTIONS

One of the jury instructions advised the jury that defendant had admitted he sold securities to Mark Thomas. Defendant did not object to this instruction; in fact, his attorney approved it.

No party may assign as error the giving or failure to give an instruction unless he or she objects and states the grounds for the objection before the jury retires to consider its verdict unless the instruction is clearly erroneous. K.S.A. 22-3414(3). An instruction is clearly erroneous only if the reviewing court reaches a firm conviction that if the trial error had not occurred, there is a real possibility the jury would have reached a different verdict. *State v. Isley*, 262 Kan. 281, Syl. ¶ 4, 936 P.2d 275 (1997).

Defendant surmises that the trial court failed to instruct the jury on an element of the charged offense. We would agree that when a defendant is charged with selling securities, one of the facts which needs to be proven is the fact that the defendant did, in fact, sell securities. However, in this case, the question of whether securities were sold was not at issue. The trial court instructed the jury that in order to prove the charge of unlawful acts in the sale of securities to Thomas, the State had to prove that defendant sold or offered to sell a security to Thomas. The trial court went on to advise the

jury that defendant had admitted selling securities to Thomas. Not only did defendant fail to object to the instruction, his attorney told the jury in closing argument, "[W]e admit that securities were sold here and the Judge tells you that in the instructions."

We conclude that if the instruction in question was erroneous, it would have been so at the invitation of defendant. A litigant may not invite and lead a trial court into error and then complain of the trial court's action on appeal. *State v. Prouse*, 244 Kan. 292, 298-99, 767 P.2d 1308 (1989). Having admitted that he sold securities to Thomas, defendant is in no position to argue that this question was not submitted to the jury.

## WERE SECURITIES SOLD TO MARK THOMAS?

Defendant next argues that the evidence was insufficient to prove he sold securities to Thomas. He argues that Thomas was not a passive investor but was active in managing the company and that his purchase of stock was not the purchase of a "security." Defendant's argument is without merit. As indicated above, his attorney admitted that securities were sold and that the judge had told the jury about that sale in the instructions. Defendant is in no position now to claim there was insufficient evidence to prove an element of the crime which he admitted at trial.

In any event, defendant seems to want to apply an "economic realities" test to the sale to Thomas. That test does not apply in cases where a defendant is charged with selling stock. Stock, by definition, is a security. See K.S.A. 1997 Supp. 17-1252(j).

## INSTRUCTIONS—DEFINITION OF SECURITIES

At the close of trial, defendant asked the trial court to instruct the jury on the definition of securities. The trial court refused.

When considering the refusal of the trial court to give a specific instruction requested by a defendant, the evidence must be viewed by the appellate court in the light most favorable to the defendant. *State v. Mitchell*, 23 Kan. App. 2d 413, 416, 932 P.2d 1012 (1997).

The evidence in this case shows that defendant admitted to selling "securities" to Thomas. Once the jury was advised of that admission, there was no need for it to determine whether Thomas

had invested in a security. There was no issue as to what was a security, there was no issue as to whether defendant had sold a security to Thomas, and there was no need for an instruction on that question.

In addition, we note the instruction requested by defendant does not correctly state the law of Kansas. Defendant sought a *Howey* instruction, which originated in the case of *S.E.C. v. Howey Co.*, 328 U.S. 293, 90 L. Ed. 1244, 66 S. Ct. 1100, *reh. denied* 329 U.S. 819 (1946). The *Howey* rationale was adopted in Kansas in *Activator Supply Co. v. Wurth*, 239 Kan. 610, and in *State ex rel. Owens v. Colby*, 231 Kan. 498, 646 P.2d 1071 (1982). The problem with defendant's argument is that Thomas purchased stock and not an investment contract. A *Howey* instruction is not appropriate in transactions involving sales of stock. See *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 85 L. Ed. 2d 692, 105 S. Ct. 2297 (1985). In this case, the instruments sold to Thomas looked like stock, bore all of the characteristics of stock, and were admitted to be stock. There was no error by the trial court as contended by defendant.

## VIC CARTER

K.S.A. 1997 Supp. 17-1254 requires that one engaging in business as a broker/dealer must be registered to do so. Defendant was convicted of engaging in the business as an unregistered broker/dealer. He was also convicted of selling unregistered securities under K.S.A. 1997 Supp. 17-1255.

Registration is not required of a broker/dealer or of a stock if the transaction is exempt under K.S.A 1997 Supp. 17-1262.

K.S.A. 1997 Supp. 17-1262(l) provides for an exemption on the registration requirements if no commission or any other remuneration is paid or given, directly or indirectly, to individuals for soliciting investors.

The question on appeal is whether defendant's payments to Carter were, in fact, commissions for finding investors or simply monthly paychecks for services rendered which were deferred and ultimately paid by the issuance of stock.

The evidence on this issue is highly conflicting. Defendant and Carter testified that Carter was being paid for services rendered.

He was being paid $1,500 per month, this amount was deferred, and he was ultimately given stock to satisfy his deferred compensation.

Defendant indicated that when he originally hired Carter, Carter was to be paid $1,500 in credit toward the purchase of stock and, in addition, was to be paid commissions for soliciting investors. According to defendant, his lawyer advised him that paying Carter's commissions would trigger the registration requirement of the securities and the broker. As a result, says defendant, Carter's agreement was amended to limit him to $1,500 per month as salary for his services rendered as treasurer of the corporation.

There is another side to the story. That side of the story is that Carter admittedly solicited, successfully, Fannie Jones and Dan Peniston to invest in the company. There was testimony that Carter's duties at Agri-Data were those of an "errand boy." Indeed, one of the bookkeepers for Agri-Data testified that Carter received assignments of stock in exchange for bringing investors into the company. Then there is the manner in which Carter was paid. Instead of being paid monthly paychecks as most employees are compensated, his compensation was deferred, and he was ultimately paid in stock.

The issue appears to be whether Carter's job at Agri-Data was merely a pretext used to compensate Carter for procuring investors. As we have pointed out, the evidence on this issue was conflicting. There is substantial evidence to support both positions.

However, issues of credibility are within the province of the jury. On appellate review, the credibility of witnesses will not be passed upon, conflicting evidence will not be weighed, and all questions of credibility are to be resolved in favor of the State. *State v. Clemons*, 261 Kan. 66, Syl. ¶ 4, 929 P.2d 749 (1996).

The exemptions from registration are affirmative defenses which a defendant legitimately has the burden of proving. *State v. Ribadeneira*, 15 Kan. App. 2d 734, 737, 817 P.2d 1105, *rev. denied* 249 Kan. 778 (1991). The jury in this case weighed conflicting testimony and decided to believe the State's interpretation of the evidence. After reviewing all the evidence, viewed in the light most favorable to the prosecution, we hold that a rational factfinder

could have found defendant guilty beyond a reasonable doubt of paying Carter commissions for procuring investors.

## INSTRUCTIONS

During the jury instruction conference, defendant requested additional language to instructions Nos. 9A and 10. Instruction No. 9A provided:

"The jury must decide if the State has proven that Mr. Carter's responsibilities, approved by Mr. Stuber, included raising money for or selling stock in the company. [*If so, were the monies owed to Mr. Carter by the corporation and later converted to stock a commission.*]" (Italicized words indicate requested supplement.)

Instruction No. 10 read:

"If you find that the State has proven beyond a reasonable doubt that the responsibilities of Mr. Carter included raising money for or selling stock in the company, [*(a)nd that he was paid a commission by the corporation for doing so,*] then you should find the defendant guilty of count Number Two." (Italicized words indicate requested supplement.)

The trial court did not err in refusing to add the additional language. Under defendant's proposed instructions, if the jury found him guilty of engaging in business as a broker/dealer without having been registered or in selling unregistered securities, it would have then had to find not only that Carter's job responsibilities included selling stock for Agri-Data, but that Carter was paid in commissions. The problem is that the statutory exemption which defendant applied in this case provides that the registration requirements of the Kansas Securities Act shall not apply where, among other conditions, no commission *or other remunerations* is paid or given, directly or indirectly, for soliciting the purchaser. K.S.A. 1997 Supp. 17-1262(1). Defendant's proposed instructions required the jury to find he was paid a commission. In fact, that is much too narrow a construction. The statute refers not only to commissions but to other remuneration. A jury could properly find that he was being paid a salary for a pretextual job and that his principal purpose in the job was to bring in investors. The trial court did not err in refusing to give defendant's proposed instructions Nos. 9A and 10 because they would not have accurately stated the law.

We have examined the jury instructions carefully, and we hold that they properly and fairly state the law as applied to the facts of this case and that the jury could not have reasonably been misled by them. Under those circumstances, the instructions as given do not constitute reversible error, although they may be in some small way erroneous. *State v. Aikins*, 261 Kan. 346, 390, 932 P.2d 408 (1997).

## SENTENCING

Defendant argues that his case must be remanded for resentencing because the trial court failed to consider the option of community corrections. We agree. The State contends that defendant waived this issue because he failed to file a motion for sentence modification in the trial court.

Defendant was convicted of one D felony and one E felony. Under K.S.A. 1990 Supp. 21-4606b, the presumptive sentence for a person convicted of a class D or E felony shall be assignment to a community correctional services program.

We have examined the record in this case and, although the trial court clearly considered the sentencing factors in K.S.A. 21-4606 and considered and denied defendant's application for probation, absolutely no mention was made at the sentencing hearing of community corrections. We can only assume that this issue was not considered by the trial court. In light of that fact, we vacate defendant's sentence and remand his case to the trial court for consideration of the presumptive assignment to community corrections. We do not mean to imply that the trial court must place defendant in the custody of community corrections, only that it must give on-the-record consideration to that option.

We also conclude that defendant did not waive this issue by failing to file a motion for sentence modification in the trial court.

Convictions affirmed, sentence vacated, and case remanded.

PIERRON, J., dissenting: I respectfully dissent. The statutes of Kansas contain many provisions requiring a person with criminal convictions to disclose that information. This is not specifically required of a person selling securities. Given that the legislature ob-

viously knows how to write in this requirement, a court inserting it into a criminal statute is not appropriate.

After a business goes under, there may be many things that investors, in retrospect, may feel they should have asked about. The difficulty with the State's interpretation of the criminal statute in question is that one cannot determine from reading it that there is a requirement to disclose, without request, a criminal record. A fair reading seems to require disclosures about the business itself, not the personal background of the sellers.

One might wonder if an investor may, in the future, be able to support a criminal prosecution for the failure of a seller of securities to reveal a past bankruptcy, difficulty with alcohol, or tumultuous marital history, or for some other subjective interest of the investor that was not asked about.

The legislature could certainly require a provision of the kind suggested here. But the usual rules of criminal statutory interpretation would not seem to support the finding of that requirement in this statute.